THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* THE NORTH RIVER BANK, in the City of New York, Defendant.

## In the Matter of MANLEY.

*Bills and notes — notice of protest — "place of business" — service by mail upon an indorser having an office in this State but residing in another.*

It is provided by chapter 416 of the Laws of 1857, section 3, that whenever the residence or place of business of the indorser of a promissory note shall be in the city or town where such promissory note is payable, all notices of non-payment of such promissory note may be served by depositing them in the post-office of the city or town where such promissory note is payable, directed to the indorser at such city or town.

In a proceeding involving the sufficiency of a notice of protest under this statute, where such a notice had been mailed to an indorser in New York city, the indorser testified that he did not reside in that city, but in the State of New Jersey; that he had an office in New York city where he received his mail, but that he did not conduct any business at the office.

*Held,* that the service of the notice of protest, if mailed to the indorser at his office in New York, was sufficient.

That the statute, in its use of the words "place of business," has not defined what is meant by the phrase or how much business must be done at the place; and that, as the indorser received his mail in New York, a notice mailed to him at that address came within the spirit of the statute, and the service thus made was a good service.

The question as to what evidence of the mailing of a notice of protest is sufficient, considered.

APPEAL by Francis Higgins, as receiver of the North River Bank, in the city of New York, the defendant, from an order, entered in the office of the clerk of the city and county of New York on the 30th day of June, 1891, confirming the report of a referee and directing the receiver to pay to one George Manley, or his attorneys, a dividend of thirty per cent upon the amount of the indebtedness of said bank to him, with interest thereon from February 4, 1891. George Manley lived in New Jersey.

*Durnin & Hendrick,* for the receiver, appellant.

*N. S. Spencer,* for the petitioner, Manley.

Van Brunt, P. J.:

George Manley, the petitioner, was a depositor in the North River Bank in November, 1890, the time of the commencement of this

action for its dissolution, and of the appointment of the appellant as receiver. There is no dispute as to the amount which the respondent had upon deposit at the time of the appointment of the receiver. On the 30th of January, 1891, the receiver was directed by the court to pay a dividend of thirty per cent on the amount of all deposits. The receiver refused to pay the petitioner the amount of this dividend on his deposit. The petitioner then applied to the court for an order directing the receiver to pay him a dividend.

On this application the receiver excused his refusal upon the ground that he held an unpaid note for $850, made by one Townsend and indorsed by the petitioner, which he claimed should be set off upon the petitioner's dividend. The petitioner claimed that he was not liable upon the note upon the ground that he had not been charged as indorser. A reference was ordered to take proof of the facts as to the petitioner's liability on the note; and the referee reported that the said petitioner had no place of business in the city of New York, and that the only notice of protest which was sent in time was addressed to him at No. 115 Broadway, in the city of New York; and that as the indorser had no place of business or residence in the city of New York, he was not charged as indorser.

We think that the learned referee, in coming to this conclusion, has adopted a too stringent definition of the words "place of business" contained in the statute (Laws of 1857, chap. 416, § 3). The statute has not defined what it means by place of business, nor how much business a man must do at a given locality in order that it may be considered his place of business within the meaning of the statute. The object of requiring notice of protest to be sent to the indorser promptly after a commercial paper has been dishonored is to give the indorser notice of the fact of the dishonor in order that he may protect himself, and the whole course of legislation upon this subject has been to adopt such a course as will be most likely to give the indorser notice and render it possible for the holder of the paper to comply with the requirements of the statute. In none of the adjudicated cases has any question similar to the one presented at bar come up for discussion.

The course of decisions prior to the passage of the act of 1857, where the indorser did not reside in the town or place where the notes were payable, seems to have been to allow service of notice

by mail, addressed either to the place of residence of the indorser or to the post-office at which he was accustomed to receive his letters and papers. Such was the decision in the case of *Remer* v. *Downer* (23 Wend., 620) and *Montgomery County Bank* v. *Marsh* (7 N. Y., 481); and the statute of 1857 seems to have been intended to extend the right to serve by mail to those cases in which the residence or place of business of the indorser was in the same city or town where the note might be presented for payment.

The learned referee, in referring to this statute of 1857, seems to have fallen into an error by limiting the effect of this statute to those cases in which the indorser resides in the city or town where the note is made payable. Such is certainly not the language, and evidently was not the intention of the legislature. The language is, " whenever the residence or place of business of the indorser of a promissory note, * * * shall be in the city or town * * * where such promissory note * * * is payable, * * * all notices * * * may be served by depositing them, with the postage thereon prepaid, in the post-office of the city, * * * directed to the indorser * * * at such city or town.

But it is claimed that the evidence in this case does not show that the indorser had a place of business within the city of New York; and this notwithstanding the fact that the indorser swore that he had. Upon cross-examination, the respondent testified distinctly to the question:

" Q. Have you a place of business in New York? A. Yes.

" Q. Where is that? A. 115 Broadway; the Boreel Building.

" Q. And that is where your mail is received, is it not? A. Yes, sir; the mail to New York."

He was further asked whether he and his son had not an office at 115 Broadway, and his answer was: " We have an office, but don't do any business in New York." His son also swore that he had an office at 115 Broadway, but that he did not conduct any business there.

We think that, within the spirit of the cases cited, the respondent, having a place in the city of New York where he was accustomed to receive his mail, having in his own judgment a place of business in the city of New York, although he did not carry on there mercantile business in the ordinary sense of the term, yet, within the

provisions of the statute, he had a place of business to which a notice of protest might be mailed.

We think, therefore, that the referee erred in holding that notice of protest mailed to the indorser at 115 Broadway was not sufficient service in order to charge him as indorser.

Upon an examination of the evidence offered for the purpose of establishing the mailing of this notice, in view of the evidence that no such notice was ever received at No. 115 Broadway, it may well be claimed that no such notice was ever sent even to that address; the evidence offered to prove the sending of such a notice shows that the witnesses examined have no recollection whatever of the mailing of that notice, and that it is mere guess-work on their part when they testify in respect thereto. The witness Connell, in his examination, states that he received certain notices in reference to the note in question as to its not being paid, and he produced two of them, but he could not give the date exactly as to when they were received, his impression being that they were received the day they were dated, the twenty-sixth of January. When asked whether there were any other notices with them his reply was, " My recollection is there were notices to Mr. Manley and Mr. Townsend." And then in answer to the question: " What was done with those other notices?" He answered: " They were sent to Mr. Manley." " Q. By whom? A. By Mr. Robertson." Why the notices to Townsend should be sent to Mr. Manley he does not explain. When Mr. Robertson comes to be examined, he is asked:

" Q. You have heard the testimony of Mr. Connell, and you are the Mr. Robertson referred to by him? A. Yes, sir.

" Q. Now tell us what you did about mailing those notices? A. Those notices were sent to the bank.

" Mr. Spencer — Do you know they were sent to the bank of your own knowledge?

" The Witness — I know because I have seen them addressed a great many times.

" Mr. Spencer — These particular notices you know must have been sent to the bank?

" The Witness — They must have been or I would not have seen them. I received them from Mr. Connell.

" What did you do with them? A. They were handed to me

and I sorted them out; they came in two sets, and those to outside parties, except Mr. Higgins and Mr. Ingersoll, the cashier, were put in envelopes and directed to the parties to whom they belonged.

"Q. How did you direct them and where? A. I directed them to the addresses of those parties.

"Q. Do you now recollect what address you directed the one to Mr. Manley to? A. His address was 115 Broadway. I, of course, must have addressed it to that address; I do not remember any other address."

It is clear that the witness had no recollection whatever when he testified as to what address he had put on the envelope. He is testifying as to what his custom was, not as to what he recollects having done with these particular notices. He is speaking about a great many notices. He says: "They (the notices) were handed to me and I sorted them out. They came in two sets and those to outside parties, except Mr. Higgins and Mr. Ingersoll, were put in envelopes and directed to the parties to whom they belonged," and that he directed them to the addresses of those parties, evidently referring to the manner in which business was ordinarily done, but without any present recollection. He is then asked:

"Q. Did you mail those yourself? A. No, sir.

"Q. What did you do with them? A. I addressed them and sealed them and put them in the box — our letter-box.

"Q. You recollect sealing them, and addressing them, and putting them in the box? A. Yes, sir."

Upon cross-examination he is asked:

"Q. How many other notes were protested on the 26th of January, 1891? A. That I could not tell you — how many were protested.

"Q. Were there a number? A. I could not state how many there were.

"Q. Were there more than one? A. I could not say that either.

"Q. Do you mean you do not recollect anything about it A. I recollect that there was notices on that day, but how many there were I do not know; undoubtedly there were, because, on the twenty-sixth — I do not say that the notices came on the twenty-sixth, they might have been posted on the twenty-sixth and come the next morning or that day.

"Q. Were there notices coming every day? A. There were.

" Q. A number of them all the time ? A. Coming in, quite a good many at this time, protested paper, quite a number of them coming in; I could not keep track so as to say or tell how many were coming in; of course, they were coming in, and I had charge of those as well as sending them off; I turned those over every day; I had charge of those myself, and had a file, and I sent off those to be sent off, and those received I put on this file to be kept for the receiver and cashier of the bank.

" Q. Did you keep any record of the notices you sent off ? A. Only those.

" Q. You only kept those notices which were sent to Mr. Higgins and Mr. Ingersoll ? A. That is all the record of the notices I kept.

" Q. You kept no record of the notices you sent off ? A. No."

He is asked: " You have no independent recollection of these particular notices ? A. I have recollection that I sent those off, that is, they have all been sent off, according as they came in, by me.

" Q. That is all the recollection you have ? A. That is all the recollection I have."

Again clearly showing that the witness had no recollection in respect to the transaction, and was only testifying as to his method of business.

He is asked how he addressed the letter inclosing the notice to Manley. He says: " I think it was George A. Manley."

" Q. Is that all ? A. I guess the street, number and city.

" Q. Tell me precisely what it was ? A. Well, I cannot exactly say just what it was; I know that the notice would read George A. Manley, and whatever his address was."

And finally, as his best recollection as to what was written on the envelope, he says: " George A. Manley, 115 Broadway, City; we generally put city on it."

" Q. You say that because you think that is what it ought to be ? A. I do not say it from what it ought to be; of course, that is what I put on; I say I must have put it on ' George A. Manley, 115 Broadway,' as that is the address we got, and the address we got would be the address I would naturally take to put on."

It appears that there was no such person as George A. Manley; that it was George Manley.

And further on when asked : "Do you recollect it apart from the other notices sent out that day?" He says : "Not particularly apart from the others because I sent them all out." And when asked what he did with the notices, he says he put them in the tin box alongside of the collection desk; that he generally put them in himself — he would not say that he always did — but if he subscribed them he generally put them in himself. But when asked as to the day or the hour in which this had been done by him he was entirely unable to say ; and his whole testimony in that respect is evidently based upon what the course of business was. It is true, upon redirect-examination, he said that he knew what those notices were, and as soon as he received them from Connell he immediately mailed them away, which clearly was not the fact, because he admits that he did not do any mailing at all, but only put them in the box alongside the collection desk.

In order to prove the mailing of the notice, the witness Flood was examined, and his testimony was simply to the effect that it was a part of his duty to take charge of the mailing of letters from the North River Bank ; that he took the letters out of the box, stamped them and took them to the post-office, but that he had not the slightest recollection of mailing any letters whatever to Manley. When asked if he knew that he took all the letters he found in the box he only says : "If there were any letters sent to him that day I took them; there was nobody else to take them." He did not testify as to any date at the time this answer was made; he kept no record of the letters he mailed and could not say how many times he went to the post-office on the 26th of January, 1891, or on the twenty-seventh, but was only testifying as to his practice in mailing the letters which he found in the box.

I do not think that upon testimony of this kind the court ought to hold that the mailing of the notice is established in this proceeding. It should be left to a jury to determine as to whether any such notice was sent or not.

I think, therefore, that the order appealed from should be affirmed and the motion granted, with leave, however, upon the part of the receiver of the bank, to sue the petitioner upon his indorsement upon the note in question, these proceedings to be no bar to such an action.

INGRAHAM, J. :

I concur with the presiding justice that the petitioner had a place of business at 115 Broadway, New York, and that a notice of protest mailed to him there was sufficient to charge him as indorser upon the note in question. I do not think, however, that there should be a new hearing.

The reference was not to hear and determine, but to take testimony as to a question of fact arising upon a motion, and to report to the court. The testimony has been taken and is now before the court.

It is not suggested that either party has any additional testimony that can aid the court in determining the question, and I think it our duty to either affirm the order or reverse the order as the facts require.

The only question the determination of which is necessary in order to decide this motion, except the one discussed by the presiding justice, is whether it is established by the evidence that the notice of protest was mailed on the 27th day of January, 1891, addressed to the petitioner at his place of business, 115 Broadway, New York.

The referee finds that such notice was so mailed, and I think his finding is sustained by the evidence.

Connell, who was in the employ of the receiver, testified that he received the notice of protest from the notary either on the twenty-sixth or twenty-seventh of January; that at the time he received the notices he handed them to his assistant Robertson. Robertson swears that two notices were handed to him by Connell; one addressed to Townsend, the maker of the note, and one to the petitioner, the indorser; that he put them in envelopes and addressed them to the respective parties, and put them in the letter-box. He was then asked the question : " You recollect sealing them, and addressing them, and putting them in the box;" to which he answered : " Yes sir;" and he remembered it from getting the petitioner's address from the " address-book " kept by the bank.

Flood, who was a messenger in the employ of the receiver, testified that it was his duty to take the letters from the letter-box, put stamps on them, and deposit them in the post-office. That on this day he took all the letters from the letter-box, stamped them and deposited them in the post-office, and that he had full charge

of the mailing of letters; and it would appear that the notice of protest to the maker of the note, sent at the same time, was duly received by him.

There was not the slightest evidence tending to contradict this testimony, except the fact that the son of the petitioner says that he never received the letter at 115 Broadway, but this does not overcome the direct evidence before referred to.

It appears that there was no one employed at the office No. 115 Broadway; that the petitioner's son was in the habit of coming to the office every day. That when his business called him out of the office he locked the door, and that any letters coming when he was absent would be put through a slit in the door and fall on the floor. That a letter coming when Mr. Manley was absent from the office might have been overlooked on the floor and so swept away and lost is not improbable; and I think on the evidence before us that the petitioner is liable for the note.

It follows that the order appealed from should be reversed, with ten dollars costs and disbursements, and the motion denied, with ten dollars costs and disbursements.

Daniels, J. :

I think that the evidence of the witnesses, together with the probability arising out of the mode of transacting the business, supports the conclusion that the notice of the dishonor of the note was, in fact, properly and legally given. And the order should be reversed and the motion denied, as directed by Mr. Justice Ingraham.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs and disbursements.