## JAMES QUINN *et al.*

### *v.*

### THOMAS C. EAGLESTON.

*Filed at Ottawa November 20, 1883.*

1. ANCIENT DEEDS—*of the proof of their existence for thirty years.* Certain deeds purporting to have been executed in 1832 and 1839, but not acknowledged according to law, were admitted in evidence in behalf of the plaintiff in an action of ejectment, as ancient deeds, on proof that they had been actually recorded in the proper county twenty-nine years before the commencement of the suit in which they were received, and they being shown to have been in the possession of the party in possession of the land before the plaintiff, and to have remained with him until his death, and it being shown that one of the deeds had been recorded more than forty years before the suit was brought: *Held,* in the absence of evidence of fraud or suspicious circumstances, that this was satisfactory proof that the deeds had been in existence for thirty years, and entitled them to be read in evidence as ancient deeds.

2. EVIDENCE—*declarations and statements as part of the res gestæ.* On a question of a boundary line, when it appears that a prior owner, since deceased, built his fence a rod within his lines, the declarations of such person, while the owner and in possession of the land, explanatory of his intention in leaving a strip of land open, is properly admitted in evidence in

behalf of a person claiming under such prior owner, as part of the *res gestæ*, as accompanying the act of throwing the strip open and keeping it open.

3. So on the question of the boundary line between two tracts of land, where the owner of one tract left a strip on one side of it a rod wide unin- closed, and the owner of the adjoining tract, in 1831, joined his fence around the other tract to that, the declarations and statements of such latter party at the time of taking possession of his tract and joining his fence to that on the adjoining premises, was held proper evidence in favor of his grantee, as accompanying his acts and going to show the character of the act 'as being hostile or otherwise, but that they would be but slight evidence of adverse possession as to the strip, being made in the absence of the owner of the other tract.

4. INSTRUCTION—*as to the legal effect of deeds in ejectment.* In an action of ejectment the court instructed the jury that the plaintiff having produced in evidence deeds showing a complete chain of title from the United States to himself for the land sued for, had proved title in himself. There was no evidence in opposition to the deeds: *Held*, that the instruction was proper, it being the duty of courts to construe writings, and instruct juries as to their force and effect.

5. SAME—*as being based on evidence.* An instruction is not improper, as not being based on the evidence, merely because there is no direct evi- dence of the fact upon which the instruction seems to be based, when the jury is warranted in inferring such fact from the circumstances of the case and the acts and conduct of the parties.

6. EJECTMENT—*proof of defendant's possession.* Where a defendant attempted·to fence up a strip of the plaintiff's land, but did not complete his fence entirely across the same, his object being to take possession of the whole strip, it was *held*, that the jury were justified in finding that the defend- ant had dispossessed the plaintiff of such strip.

APPEAL from the Circuit Court of Stark county; the Hon. DAVID McCULLOCH, Judge, presiding.

This was an action of ejectment, commenced February 21, 1883, and brought by Thomas C. Eagleston, against James Quinn and John Gustafson, to recover possession of a strip of land about one rod in width, across the north end of the west half of the north-west quarter of section 14, town 13 north, range 7 east, in Stark county, in this State, lying north of the line of a hedge running across said tract of land, con- taining about one-half acre.

It appears from the evidence that in the year 1851 John T. Eagleston, the father of the plaintiff, and under whose title plaintiff claims, purchased the said north-west quarter of section 14, which at that time was in the open prairie, at a distance from any improvement. The county surveyor, after much difficulty, succeeded in finding what was considered the original mound of the government survey, at the north-west corner of section 14, and established it as such corner. A stone was placed in the mound, which has remained there ever since. Soon after purchasing the land, John T. Eagleston built a cabin, and moved on the land in the fall of 1851, and in 1852 he inclosed it with a rail fence according to the survey of the county surveyor, running his fence directly east from the corner stone set as on the north line of his quarter. Some years after that he planted a hedge upon the north and west sides of his land, setting the hedge in upon his own land one rod from his supposed line. After the hedge was grown, the old rail fence was permitted to decay and fall down, except some twenty-five or thirty rods on the north, where the hedge failed to grow, in a pond or flat piece of ground. Across this flat ground the rail fence has always been kept up upon the line, making the offset one rod wide and about twenty-five or thirty rods long between the hedge line and the line of the rail fence, there being connecting fences with these lines on the east and west ends of the offset, which has always remained within Eagleston's inclosure until December, 1882, when defendant Quinn entered and erected a fence on the line of the hedges nearly across the flat ground, claiming the hedge to be the boundary of Eagleston's land, and that the strip one rod wide between the hedge and the line of the old rail fence belonged to him. Defendant Quinn claims to own the west half of the south-west quarter of section 11, in the same township and range, and derives his title from one William Luce, who fenced it about 1861, joining the fences on the east and west lines to Eagleston's fence

on the south.   Neither Luce, nor Quinn, who bought from Luce in 1867, ever built any fence across the south end of their tract.   Quinn claims the hedge to be the north boundary of Eagleston's land, and that the strip one rod wide between the hedge and the line of the old rail fence belongs to him, Quinn.   The other defendant is his tenant.   The plaintiff recovered in the court below, and the defendants appealed.

Mr. FRED. S. POTTER, for the appellants:

There was error in admitting the three deeds not properly acknowledged, as ancient deeds.   There is no presumption that a deed is thirty years old that arises from anything on the paper.   It must be shown to be that old at the time it is offered in evidence, by evidence *aliunde,* and it should appear that the party claimed under such deed.   *Smith* v. *Rankin,* 20 Ill. 14; *Whitman et al.* v. *Henneberry,* 73 id. 109.

These deeds and their genuineness were questions for the jury, under all of the evidence.   Plaintiff's first instruction told the jury that "the plaintiff has produced in evidence deeds showing a complete chain of title from the United States to himself."   The deeds complained of were in the "chain."   The permitting them to be read does not decide on the final influence of the evidence as to its reality—that is for the jury.   2 Phillips on Evidence, (4th Am. ed. C. & H.'s notes,) 477, also pp. 475–480.

The court improperly admitted proof of the declarations of the plaintiff's father after he had fenced out the strip in question.   Such declarations are admissible only as a part of the *res gestæ,* and they must be a part of the thing done.   Had they been made while the fence was being set, or before he lost possession, it might have been within the rule.

Ejectment will not lie in favor of one in possession.   *Reed et al.* v. *Taylor et al.* 56 Ill. 291.

If plaintiff's father's declarations were proper evidence, certainly those of Luce, made at the time he built his fence

and joined it to the Eagleston hedge, in regard to the ownership of the land down to the hedge, were.

Plaintiff's first instruction, that the plaintiff had shown title, is bad, as taking the finding of important facts from the jury. The court has no right to tell them what facts are proved. *Van Duzor* v. *Allen*, 90 Ill. 504; *Hubner* v. *Feige*, id. 212.

Mr. MILES A. FULLER, for the appellee:

The proof made in respect to the deeds, with no evidence of fraud or suspicious circumstances, was sufficient to show they had been in existence thirty years, and entitled them to be read in evidence. *Whitman* v. *Henneberry*, 73 Ill. 113; *Fell* v. *Young*, 63 id. 106.

We understand the rule to be well established that the declarations of a party in possession, explanatory of his acts or of his possession, are admissible in evidence as a part of the *res gestæ*, and in this case were competent to show that by placing his hedge inside of the line he did not thereby intend to surrender possession, or his claim, to the land outside of the hedge. 1 Greenleaf on Evidence, secs. 108–111; *Proctor* v. *Town of Lewiston*, 25 Ill. 153; *Buchanan* v. *Curtis*, 25 Wis. 107; *Irwin* v. *Dixon*, 9 How. (U. S.) 10; *Fyffe* v. *Fyffe*, 106 Ill. 646.

Mr. CHIEF JUSTICE SHELDON delivered the opinion of the Court:

It is assigned for error that the verdict of the jury is not supported by the evidence.

There seems to be no question as to the plaintiff's ownership of the north-west quarter of section 14, and the principal point of controversy is as to the location of the boundary line between the parties, though it is also contended by the defendants that the strip of land in question has been occupied by them under a claim of ownership for over twenty years,

which constitutes a bar to a recovery. Without attempting a review of the evidence, we will say that after a full examination of it we are satisfied with the finding of the jury in favor of the plaintiff on both the above named points of contest, and find no reason for disturbing the verdict on the ground of its not being warranted by the evidence.

It is insisted that at least as to that part of the land. in the slough, or what is called the "offset," defendants are not guilty, on plaintiff's own testimony that "no fence has been on the line of the hedge across the space; the strip in the jog has been in my field, and has never been separated from it until last fall, when the defendants built one there, but not clear across." The fence not being built clear across, would not take that part out of the possession of plaintiff, it is said, and that plaintiff could not recover for land in his own possession. We can not say that the jury were not justified in finding that part was essentially separated from plaintiff's field, although the fence did not extend entirely across the offset. The evident purpose in making the fence was to withdraw that part from Eagleston's inclosure and include it in Quinn's own, and extend his possession to the line of the hedge, and the jury might regard that this had been done, practically.

Various rulings of the court are excepted to. The first is as to the admission in evidence of the following deeds: Connor to Roads, dated February 18, 1832, and recorded December 31, 1853; Roads to Bixler, dated April 13, 1839, and recorded December 31, 1853; and Bixler to Drummond, dated July 31, 1839, and recorded December 23, 1839. The deeds were not acknowledged according to law, and were admitted as ancient deeds. The objection is that there was not proof that the deeds were in existence at least thirty years before they were offered. Mr. Fuller testified that as plaintiff's attorney he made inquiry and search for these deeds, which were not in plaintiff's possession, and found them tied

up in a package, with other deeds, among the old papers of John T. Eagleston, deceased. They were shown to have been actually recorded in Stark county over twenty-nine years before the commencement of this suit, and to have been in the hands of John T. Eagleston, the party then in possession of the land, and to have remained with him until his death. The last deed of the three, (Bixler to Drummond,) which is dependent upon the other two, and would not, we may suppose, have been made had not they (the deeds from Connor to Roads, and from Roads to Bixler,) been previously executed, was actually recorded in Stark county more than forty years before this suit was begun. This, with no evidence of fraud or suspicious circumstances, was, we deem, satisfactory proof that these deeds had been in existence for thirty years, and entitled them to be read in evidence as ancient deeds. *Fell* v. *Young,* 63 Ill. 106 ; *Whitman* v. *Heneberry,* 73 id. 109.

Another ruling complained of is in permitting the plaintiff to prove what was said by John T. Eagleston (now deceased) when he was in possession of the premises, as to his reason for planting his hedge in from the line of his land, and leaving a strip of land one rod wide outside of the hedge. The planting the hedge in from the line of the land was an equivocal act. It might be interpreted as a dedication to the public, or as setting the hedge on the true line. The declarations of Eagleston when he was the owner and in possession of the land, explanatory of his intention in leaving the strip of land open, we think were properly admitted in evidence as a part of the *res gestæ,* as accompanying the acts of throwing the land open and keeping it open. *Proctor* v. *Town of Lewiston,* 25 Ill. 153 ; *Buchanan* v. *Curtis,* 25 Wis. 99.

Exception is also taken to the refusal to permit the witness Dickerson to answer the following question, put by defendants' counsel: "What did Luce say, if anything, at the time he took possession of his eighty, and built his fence on his west line, and joined it up to the Eagleston hedge; state what he

said upon that point, if anything?" There was no objection to the form of the question. We think it should have been allowed, for the same reason that evidence was properly received of Eagleston's declarations. It would be evidence accompanying the act of Luce, going to show the character of the act as being hostile or otherwise to Eagleston's title, and as bearing upon Luce's and defendant's possession of the strip in question, whether it was permissive on the part of Eagleston, or adverse to him, twenty years' adverse possession being one ground of defence. Still, we are not prepared to say that the denial of this evidence was an error so material that it should cause a reversal of the judgment. Such claim of ownership on such an occasion, in the absence of Eagleston, would be but slight evidence of adverse possession, and especially as all the evidence besides does not seem to show any reasonable ground of claim of an adverse possession arising before 1867, which would be less than twenty years before suit brought, when a new survey was made by another county surveyor, and a different corner was established as the north-west corner of section 14 from the one established by the former county surveyor. Until that time there does not seem to have been any question of the correctness of the corner first established, and so no reason until then for regarding defendants' possession as adverse.

Objection is taken to the ruling on instructions. That the jury were instructed for plaintiff that he having produced in evidence deeds showing a complete chain of title from the government of the United States to himself, for ninety-three acres of the west side of the north-west quarter of section 14, etc., had proven title to himself in that part of the quarter section. There was no evidence in opposition to the deeds, and the instruction was proper. It is the duty of courts to construe writings, and to instruct juries as to their force and effect.

Plaintiff's fourth instruction was, in substance, if Eagleston permitted Luce to join on to his fence, and it was understood by them that the land was Eagleston's, then Luce's possession was not hostile. The objection to this instruction is, that it was not based on the evidence; that there was no evidence tending to show that Luce and Eagleston ever met or spoke to each other on this subject. Such an understanding might have existed between the parties, and the jury have been warranted in inferring that it did, from circumstances in the case, such as, that the rail fence was still standing on the line, the purpose for which plaintiff set the hedge in from the line, the fact that the county surveyor had established the north-west corner, and it had never been questioned, etc., without proof at this late day of any conversation between the parties. Such circumstances go to show that the joining of Luce's fences to Eagleston's, without permission, would have been regarded as a trespass, and it is not likely that a trespass was committed and suffered. We do not think the objection well taken. ·

The sixth instruction relates only to the part within the "offset," and the criticism made upon that is, that it assumes that the defendants built their fence across it, when the evidence is that the fence was not built "clear across." We have before remarked upon the circumstance of the fence not being built entirely across the strip in the offset, as warranting a recovery for that part, and according to what we have said it will be seen that we regard this variance in the instruction from the evidence as immaterial.

We perceive no error in the refusal of instructions asked by the defendants.

Finding no material error in the record, the judgment will be affirmed.

                        *Judgment affirmed.*