Z. R. GILBERT, PLAINTIFF IN ERROR, v. SOUTHERN LAND & TIMBER COMPANY, DEFENDANT IN ERROR.

1. A void tax deed describing real estate is a sufficient written instrument upon which to base a title to said real estate by adverse possession.

2. Every presumption is in favor of a possession in subordination to the title of the true owner, and an adverse possession as against such owner must be established by clear and positive proof.

3. When the evidence offered to establish adverse possession is uncertain as to the date when the acts constituting adverse possession were commenced, and does not clearly show that they were commenced seven years before an action of ejectment by the true owner is brought to recover the land held adversely, a verdict and judgment in favor of the true owner will not be reversed in this court.

This case was decided by Division B.

Writ of Error to the Circuit Court for Washington County.

The facts in the case are stated in the opinion of the Court.

*W. O. Butler* and *Daniel A. Simmons,* for Plaintiff in

*Maxwell & Reeves,* for Defendant in Error.

HOCKER, J.: This is a case in which an action of ejectment was brought by the Southern Land & Timber Com-

pany, a corporation, in the Circuit Court of Washington County against Z. R. Gilbert, to recover the possession of the following described lands in that county, *viz.*: The southwest quarter of northwest quarter, the south half of the southwest quarter and southwest quarter of southeast quarter of Section 35, Township 3 North, Range 13 West, containing 160 acres. The suit was commenced on September 1st, 1904, a plea of not guilty was filed and a trial was had at the spring term on May 31st, 1906. There was a verdict and judgment for the plaintiff: A motion was made for a new trial on the grounds that the verdict was not supported by the evidence, was against the evidence, and contrary to law. This motion was overruled, exceptions noted to the ruling, and the only error assigned here is based on this ruling.

It is admitted in the record that the plaintiff's deeds to the lands gave him a perfect paper title, and the contention of the defendant was that he had a title by adverse possession under color of title based on a tax deed made in 1890, which he admits is void as a tax title, but contends, is sufficient in law to support a title by adverse possession. The tax deed is in regular form and purports to convey the lands in dispute. The only question, therefore, is whether the defendant made out a title by adverse possession under the evidence.

Mr. Gilbert testified that in 1894 or 1895, a Mr. Lee got authority from him to enclose and did enclose with a fence five or six acres of the southwest quarter of the southeast quarter of the land in dispute; that Lee built a house on the adjoining southeast quarter of the southeast quarter, and lived in it for five or six years—he does not know how long—and enclosed and cultivated for that time a field which as above stated embraced five or six

acres of the southwest quarter of the southeast quarter, the rest of the field being in the southeast quarter of the southeast quarter, to which at the time Gilbert had no claim. Lee acknowledged him as landlord and paid him some rent by keeping up the fences and doing some outside work for him. The rails to build and keep up the fence were taken from the land. Gilbert also testified that he at various times had taken timber, cypress boards and fire wood from all of the land in dispute. Lee is shown by the testimony of Mr. Evans to have left the property in the spring of 1903, when Evans cultivated it for a year, but it is not clear from his testimony that he had any contract with Mr. Gilbert in regard to it, or that he ever paid anything for the use of the land. He admits, however, that Mr. Gilbert was the owner of the land. A Mr. Hendrix cultivated the cleared land in 1904, recognizing Mr. Gilbert as the owner. Several of the witnesses testify that the property was generally regarded as belonging to Mr. Gilbert. A Mr. Danley, who appears to have been the agent of the plaintiff in looking after tax titles, visited the property in 1897 or 1898, and saw some land cleared. He went to see Mr. Gilbert about the tax title, and Mr. Gilbert showed it to him. Mr. Gilbert's memory as to date seems to have been very defective. He testified that he leased the land for turpntine purposes to Owens & Son in 1898, and it was turpentined that year, when it was clearly shown that the date of the lease was October, 1899, and that the land was boxed for turpentine not earlier that January or February, 1900. None of the witnesses know exactly how long Lee cultivated the land or at what time of the year he began to work upon it. Granting that Lee cultivated it for five years and occupied it for that

21—S C

length of time, then if Evans is correct in saying that Lee left the place in the spring of 1903, the full period of seven years adverse possession is not clearly and satisfactorily established by the evidence.

It was said by this court in Barrs v. Brace, 38 Fla. 265, 22 South. Rep. 991, that "every presumption is in favor of a possession in subordination to the title of the true owner, and an adverse possession as against such owner must be taken strictly, and established by clear and positive proof. The possession necessary to confer title by an adverse holding must be actual, continuous and adverse to the legal title for the full statutory period."

The evidence in this case is too desultory and uncertain as to the date when the acts were commenced by which it is attempted to make out a title by adverse possession, to justify us in reversing the judgment of the trial court, and the same is affirmed at the cost of the plaintiff in error.

TAYLOR and PARKHILL, JJ., concur.

SHACKLEFORD, C. J., and COCKRELL and WHITFIELD, JJ., concur in the opinion.