JOHN WILLIAM CLARK AND CORA B. WILLIAMS, FOR THE USE OF TOWNSEND-BOWER COMPANY, A CORPORATION, *Plaintiffs in Error*, v. J. F. COCHRAN AND F. M. PHILLIPS, PARTNERS DOING BUSINESS AS COCHRAN & PHILLIPS, *Defendants in Error*.

Opinion Filed May 12, 1920.

Petition for rehearing denied June 22, 1920.

1. In an action of ejectment the rule is that the plaintiff must recover if at all upon the strength of his own title and not on the weakness of his adversary's title; but if the plaintiff traces his title from the government he need not show possession by intermediate grantors.

2. In an action of ejectment involving the title to lands embraced in what is known as the "Forbes Purchase," a large tract of land lying between the St. Marks and Apalachicola rivers in the State of Florida and granted by the Seminole Indians and confirmed by the Spanish Government to Panton, Leslie & Company and John Forbes & Company, the patent from the United States Government to Colin Mitchel and Robert Mitchel issued in the year 1842 pursuant to certain decrees of confirmation of the claim of Colin and Robert Mitchel to the lands described, is sufficient to establish title to the lands described in Colin Mitchel and other named patentees at the date of the patent.

Clark et al. v. Cochran et al.—Syllabus.

3. In an action of ejectment involving the title to any such lands copies of deeds of conveyance and other documents tending to show a transfer of the title to the lands from Colin Mitchel and others to the Apalachicola Land Company are admissible as ancient documents.

4. Certified copies of the record of decrees in chancery in a cause in which Trustees of the Apalachicola Land Company were defendants appointing a receiver of the company with power to sell the lands in like manner as the Trustees had been authorized to do under the company's articles of association, such orders bearing dates from 1857 to 1880, and appearing of record in the Clerk's offi;ce for Franklin county, are admissible in evidence as ancient documents in an action of ejectment involving the title to lands embraced in the description of lands contained in the patent from the United States Government to Colin Mitchel and others.

5. Where the secretary and treasurer of a corporation testifies that it is his duty as such officer of the corporation to have the custody of all deeds and other documents belonging to the corporation, and that he has not in his possession the original of a certain deed to the corporation or a certain deed belonging to it, and that he did not know where it was, the showing thus made is sufficient for the introduction of secondary evidence of the contents of such document under Section 1520 of the General Statutes of 1906.

6. A tax deed, although invalid, is sufficient as an instrument purporting to convey lands to give color of title upon which to base the defence in an action of ejectment of title by adverse possession.

7. The claim of title by adverse possession under color cannot be built upon desultory logging operations on wild uncultivable lands, where the possession of the land is not of such cnaracter that at any time during the period of seven years the defendant or claimant could be successfully sued as a trespasser.

8. The distinction drawn by this court in the character of possession necessary to support title by adverse possession, between that possession evidenced by the mere occasional cutting and removing of timber from wild lands and that evidenced by the making of turpentine thereon continuously for the statutory period of seven years is adhered to.

9. A tax deed made and executed under the provisions of Chapter 4888, Laws of Florida, 1901, in substantial compliance with the form therein prescribed is prima facie valid; but such prima facie validity may be overcome, in which case the party claiming under such deed must show its validity as a conveyance of title.

10. Under the provisions of Chapter 4322, Laws of Florida, 1895, the assessment in the aggregate of several sections of land in one assessment, the failure of the clerk of the court to forward to the owner or person last paying taxes on the land of a notice of application for a tax deed thereto, or either of these conditions is sufficient to establish the invalidity of a tax deed under the said statute.

11. Where one acquires a tax certificate, his rights thereunder are determined by the laws in force at the time the certificate is acquired, and the deed issued upon such certificate confers only such rights upon the vendee or holder as the statute in force at the time and under which the deed is issued confers.

A Writ of Error to the Circuit Court for Franklin County; E. C. Love, Judge.

Judgment reversed.

*E. T. Davis* and *C. H. B. Floyd,* for Plaintiffs in Error;

*J. A. Edmondson* and *W. J. Oven,* for Defendants in Error.

ELLIS, J.—The plaintiffs in error brought an action of ejectment in the Circuit Court of Franklin County against the defendants in error as partners under the name of Cochran & Phillips to recover possession of certain lands described as the E. ½ of Sec. 1; all of Sec. 11; W. ½ of Sec. 12 and the N. W. ¼ of Sec. 13, in Township 6 S., R 4 W., containing about 1,440 acres. The defendants pleaded not guilty, the parties went to trial and there was a verdict and judgment for the defendants. The plaintiffs took a writ of error and assigned twenty-one errors.

The plaintiffs claimed title to the lands in dispute under a patent from the United States Government to Colin Mitchel and Robert Mitchel issued in 1842 pursuant to certain decrees of confirmation of the claim of Colin and Robert Mitchel to certain lands described in the patent. The lands described in the patent embrace approximately the territory between the St. Marks and Apalachicola Rivers and extending from Township two North to the Gulf of Mexico.

The defendants claimed title under two tax deeds made in 1901 to the Franklin County Lumber Company for the taxes of 1899, and a deed from that company to them in November, 1911, and title by adverse possession under color of title.

The rule in ejectment is that the plaintiff must recover if at all upon the strength of his own title and not on the weakness of his adversary's title; but if he traces his title from the government he need not show possession of intermediate grantors. See Burt v. Florida Southern R. Co., 43 Fla. 339, 31 South. Rep. 265; Ropes v. Minshew, 51 Fla. 299, 41 South. Rep. 538; Skinner Mfg. Co. v. Wright, 56 Fla. 561, 47 South. Rep. 931; Florida Finance

Co. v. Sheffield, 56 Fla. 285, 48 South. Rep. 42; Ocala Northern R. Co. v. Malloy, 68 Fla. 430, 67 South. Rep. 93; Stewart v. Mathews, 19 Fla. 752.

The defendants' counsel in their brief urge that the plaintiffs "did not deraign a "regular" chain of title from the patent from the United States to Colin Mitchel and others or from Colin Mitchel and others down to plaintiffs."

The case of Mitchel et al. v. United States, reported in 9 Peters 711, 9 L. Ed. 283, decided the controversy between the United States Givernment and Colin Mitchel and others which arose concerning the title to the lands described in the patent which was afterwards issued. In that case it was decided that the title to the land rested upon grants from the Seminole Indians, which grants were confirmed by the Spanish Government to Panton, Leslie & Company and John Forbes & Company, successors to them, and that Colin Mitchel and others represented by Robert Mitchel had, by the law of nations, the laws and usages and customs of Spain or the province of Florida, acquired a right to the lands which would have been valid had the territory remained under the dominion of Spain. It is true that the patent issued by the government of the United States to Colin Mitchel and others was merely a written acknowledgement of title in the patentees, it is something more than a mere "quit claim." It is an acknowledgment that title to the lands became vested in the patentee "under the laws and ordinances of Spain under whose government the title originated; the proceedings under the treaty and the Acts of Congress relating thereto." Under the treaty between the United States and Spain the territory described would have become the property of this government if Spain had not already disposed of the title according to

the laws and customs of that government. The Supreme Court of the United States held that the government of Spain had disposed of its title prior to the treaty, and that Colin Mitchel and others had acquired a right to the land which under the usages, customs and laws of Spain the treaty and the Acts of Congress in relation thereto was valid. Pursuant to that decision the government surrendered, conveyed, granted its rights or claims to the land to the patentees. The patent and the decision referred to above are sufficient to establish title to the land in Colin Mitchel and others at the date of the patent.

The objections and exceptions taken and made by the defendants to the copies of deeds of conveyances, wills and other documents tending to show a transfer of the title to the land in dispute from Colin Mitchel and others down to the Apalachicola Land Company, an association formed by the original owners of the land and their legal representatives for the purpose, as stated in the Articles of Agreement, of enabling "the proprietors to give clear and unimpeachable titles to purchasers without delay," etc., were properly overruled. The documents are ancient, some being dated as early as 1835, they appear to have been formally executed and duly recorded, and to have been in proper custody and bore indorsements showing their age.

The question of the admissibility of the certified copy of a decree, rather a certified copy of a record entry which appears in the Clerk's office for Franklin County was presented. The instrument offered was a copy of the record of a decree made by His Honor, J. J. Finley, Judge in Chancery in Franklin County, in a cause wherein George Carr was complainant and Lewis Curtis and

Nathaniel Thurston as Trustees of the Apalachicola Land Company were defendants. The decree appointed Charles Ellis as Receiver of the Apalachicola Land Company with power to sell the lands in like manner as the Trustees had been authorized to do under the Articles of the association. It was dated April Term, 1857. A certified copy of the decree or order as the same then appeared of record was made by William Valleau, Clerk of the Court, in May, 1857, which document is the one now appearing of record and was recorded in 1882. The plaintiffs also introduced in evidence pages 194-195 of the book from the Clerk's office containing the record of the decree. Objections were made by defendants to the document as evidence upon many grounds. This and copies of subsequent orders made in the same case by the Judge of the court appointing receivers of the company to succeed those who had died. Orders confirming the reports of Charles Ellis as receiver were admitted. These documents bore dates from 1857 to 1880 and purport to be orders in a cause pending in the court involving the lands described in the patent mentioned. These orders were recorded in deed books; they were not the original orders nor copies of the record of the originals, and they were not recorded in the Order Books of the Chancery Court. Notwithstanding these deficiencies in the evidence offered and other technical objctions raised by the defendants to these muniments of title we think that there was no error in allowing the documents to be read in evidence. They were ancient documents, recorded instruments; the records were in proper custody, and the originals were entitled to record. The question was largely one of discretion for the trial court as to the proof necessary to admit the documents as ancient; the question of genuineness if any such issue is to be raised

is for the jury.  They came from a place where they
would naturally be found if genuine.  The fact that they
were not recorded in the proper book should exert no dis-
credit upon the fact that they were in proper custody.
In some cases documents may be so old that their proper
custody cannot be determined and it becomes unneces-
sary to show production from proper custody.   In the
matter of these documents, however, the proper custody
was shown by the very character of the instrument, and
there is no evidence of fraud or suspicious circumstances.
Aside from the fact that those records some of which
were introduced in evidence in this case constitute the
basis of the title to approximately a million and a half
acres of land in the territory, that many records, orders,
decrees and documents were destroyed by fire which
consumed the building in which the county records were
kept and all the records in 1874 and would be impossible
of re-establishment in every detail and that the receiv-
ers' sales of the Apalachicola Land Company's lands have
been generally treated as made under sufficient authority
so that it has become almost a local rule of property, we
think the documents offered in this case were admissible
as ancient documents.  See Williams v. Conger, 125 U.
S. 397, 8 Sup. Ct. Rep. 933; Whitman v. Heneberry, 73
Ill. 109; Pridgen v. Green, 80 Ga. 737, 7 S. E. Rep. 97;
Applegate v. Lexington & Carter County Min. Co., 117
U. S. 255, 6 Sup. Ct. Rep. 742; King v. Little, 1 Cush.
(Mass.) 436; Pitts v. Temple, 2 Mass. 538; Quinn v.
Eagleston, 108 Ill. 248; 10 R. C. L. 1097; Hogans v. Ca-
ruth, 19 Fla. 84; White v. Farris, 124 Ala. 461, 27 South.
Rep. 259; 17 Cyc. 446; 10 R. C. L. 1135.

In this view of the evidence there was no breach in the
chain of plaintiff's title from Colin Mitchel and Robert
Mitchel, who held under Indian grants confirmed by the

government of Spain and adjudicated to be valid by the government of the United States to the Apalachicola Land Company. See Adams v. Fryer, 59 Fla. 112, 52 South. Rep. 611.

The certified copy of the deeds from Charles Ellis as Receiver of the Apalachicola Land Company to Benjamin Curtis and George K. Walker dated in 1859, and from Walker and wife to Curtis; the certified copy of the will of Walker and certified copy of the deed from the executors of George K. Walker's will to Curtis, and from Curtis to Ashton, and from other intermediate grantors to John William Clark and Cora B. Williams, who sue for the Townsend Bower Company, were properly admitted.

J. D. Bower, a witness for the plaintiffs, testified that he was a stockholder and secretary and treasurer of the Townsend Bower Company, the real party in interest; that it was his duty under the by-laws of the corporation to have the custody of all deeds, documents, etc., belonging to the corporation; that he did not have in his possion the original deeds and other documents copies of which were offered in evidence, and that he did not know where they were. The showing thus made was sufficient for the introduction of secondary evidence. Section 1520, General Statutes, 1906, Compiled Laws, 1914. The objection being that the absence of the original documents had not been properly accounted for, and not shown to be without the jurisdiction of the court.

The plaintiffs having shown a connected chain of title from the government of Spain, confirmed by the United States Government, they seek a reversal of the judgment below because as they claim the tax deeds under

which the defendants claim title were void, and they failed to show title by adverse possession.

The first assignment of error rests upon the ruling of the court admitting in evidence the tax deeds to the Franklin County Lumber Company dated the 24th day of February, 1903. One of these deeds recites that sections, one, two, and three of township six south, range four west, were sold in January, 1901, for the unpaid taxes for the year 1899 assessed as the property of the "Ga. & Fla. Investment Company." The other that section eleven, west half of twelve and N. W. ¼ of thirteen, township six south, range four were sold in January, 1901, for the unpaid taxes of 1899 as the property of the same company. The defendants also introduced in evidence a deed from the Franklin County Lumber Company, a corporation, to them dated Novemebr 8th, 1911, purporting to convey sections 1, 2, 3, 10, 11, 12, 16, 30, N. W. ¼ Sec. 13, N. ½ of Sec. 26, all in township six south, range four west, and other lands. There was no objection to this deed interposed by the plaintiffs.

As the defendants claimed title by adverse possession and defended their case upon that principle of law also, there was no harmful error in overruling the objection to the introduction in evidence of the tax deed as color of title. Because a tax deed, although invalid, is sufficient as an instrument purporting to convey the premises to give color of title upon which to base the defense of title by adverse possession. Carn v. Haisley, 22 Fla. 317; Sanford v. Cloud, 17 Fla. 557; Gilbert v. Southern Land & Timber Co., 53 Fla. 319, 43 South. Rep. 754. The title at the beginning of the action was the question to be tried. Jones v. Lofton, 16 Fla. 189.

This action was begun in January, 1917. The date of the tax deeds to the Franklin County Lumber Company was as stated, February 24, 1903.

The evidence tended to show that the lands in question were considered by the owners about 1899 or 1900 to be sparsely timbered; that they were not "useful for anything other than cutting the timber at that time;" that they were unfit for farming, being too flat and wet; that soon after acquiring tax deeds to the land the Franklin County Lumber Company, about 1904, caused an employee to survey the lands, post notices, printed on muslin cloth against trespassing, to ride over the lands at irregular intervals, direct and supervise the logging operations that were being carried on upon the premises and to pay taxes. The logging operations were more or less of a desultory character, caused sometimes by the weather condtions and at other times by the action of the company in shutting down the mills. At times logging operations were discontinued for several months. This character of possession continued until 1911 when the company sold to the defendants. At the time the sale was made the company was "logging the lands." The defendants then went into possession. The character of this possession was different from that of the former owner in that the defendants used the land for turpentine purposes. They cut boxes and put up cups, and caused the land to be "policed," by which term was meant the employment of one to ride over the premises and keep off trespassers. In turpentine operations the trees are not usually "worked" during the winter months. In this character of possession there are also periods of inactivity. Taxes were also paid on the lands by the defendants from the date they acquired them. There is a slight period indefinite in point of time when either the de-

fendants nor their grantors appear to have been in possession of the land. That period occurred between the date of the deed to defendants and during the year 1912 when they began to turpentine the lands. This period was about eight or nine months, but it cannot be considered that that period of inactivity marked an abandonment of the premises by the defendants who were entitled to the benefit, if any there was, of their predecessors so-called possession to the date of the conveyance. We think that considering the character of the lands the same being wild, uncultivable and suitable only for logging and turpentine purposes that the transition of one character of possession to the other necessitated some delay because of the approaching winter months. Whether the evidence was sufficient to support a finding by the jury that the defendants had acquired title by adverse possession depends upon whether the character of possession held by the Franklin County Lumber Company answered the requirements of the statute. See Par. 2, Section 1721, General Statutes, 1906.

The defendants did not have possession under their deed from the company for seven years before the commencement of the suit. The case of Bagdad Land & Lumber Co. v. Poston, 69 Fla. 340, 68 South. Rep. 180, announces the doctrine that the taking of timber from land during a period of years for sawmill purposes does not comply with the statutory requirement for adverse possession under color of title, since such taking of timber is not a "cultivation or an improvement, or a fencing or a use for taking fuel or of fencing timber for purpose of husbandry or for the ordinary use of the occupant." It was there held that the mere taking of timber for sawmill purposes is not similar to any of the purposed named in the statute. Applying this rule to the case at bar,

the defendants would be deprived of any benefit of their grantor's possession to establish title by adverse possession and must fail upon that phase of the case.

In Gould v. Carr, 33 Fla. 523, 15 South. Rep. 259, the principle is announced that if the adverse claimant is not so in possession of the land during the entire period of seven years that he may at any time be sued as a trespasser the statute will not run in his favor. That there can be no constructive adverse possession against the owner, when there is no actual possession which he could treat as a trespass and bring an action for. There were many times covering periods of several months during the logging operations by the Franklin County Lumber Company when that company nor any of its employees or timber men could have been successfully sued as trespassers. See also Barrs v. Brace, 38 Fla. 265, 20 South. Rep. 991; Avery v. Lock, 55 Fla. 612, 46 South. Rep. 844; Wilson v. Jernigan, 57 Fla. 277, 49 South. Rep. 44.

In the case of Gilbert v. Southern Land and Timber Company, *supra,* the court held that every presumption is in favor of a possession in subordination to the title of the true owner and an adverse possession as against such owner must be established by clear and positive proof.

In the case of Richbourg v. Rose, 53 Fla. 173, 44 South. Rep. 69, this court said that the "occupation of pine land by annually making turpentine on it is such an actual possession as will oust constructive possession by one claiming merely under a superior paper title."

The case of Doyle v. Wade, 23 Fla. 90, 1 South. Rep. 516, is sometimes referred to in support of the doctrine often contented for that the use of the land for the

purposes for which it is adapted constitutes such an occupancy or possession as will ripen into title by adverse possession. The language of the court, however, does not justify that position. The Chief Justice who rendered the opinion merely said that the "uses to which it (the land) is adapted or employed, the circumstances and situation of the possession" are matters to be considered in determining whether there has been a continued occupancy and possession. The distinction between that character of possession or occupancy marked merely by the cutting and removing of timber from the land and that shown by the "making of turpentine" thereon seems to have been clearly drawn by the court. Title by adverse possession under color of title cannot be built upon the one, although it may be upon the other.

This brings us to the question whether the tax deeds to the Franklin County Lumber Company were invalid upon their face, and therefore inadmissible in evidence as a conveyance of land.

The tax deeds were made and executed under the provisions of Chapter 4888, Laws of Florida, 1901, and are substantially in compliance with the form therein prescribed, and are *prima facie valid.* But where the *prima facie* effect given a tax deed even by statute is overcome, it is the duty of the party claiming under it to show its validity. Clark-Ray-Johnson Co. v. Williford, 62 Fla. 453, 56 South. Rep. 938; McLeod v. Williams, 73 Fla. 338, 74 South. Rep. 408.

The plaintiffs requested the court to give the following instructions:

"1. I charge you that the tax deeds introduced by the defendants, are null and void, and conveyed no legal title to the lands in question to the Franklin County Lum-

ber Company the grantee therein, and the deed from the Franklin County Lumber Company conveyed no legal title to the lands in question, to the defendants in this cause, and the said tax deeds and the said deed to the defendants, can only be considered as color of title, and unless you find that the defendants, Cochran & Phillips, entered possession of the lands, and occupied the lands, openly, notoriously, continuously and adversely for a period of seven years prior to the filing of this suit, you shall find your verdict in favor of the Plaintiffs."

"2. I instruct you to find for the plainiff as to East Half of Section One, included in this suit."

"3. I charge you that the cutting of saw logs and removing them from the lands, from time to time, and the posting of notices warning trespass, and going over the lands from time to time to keep off trespassers, and the payment of taxes, is not adverse possession, and the defendants cannot defeat the legal title of the plaintiff by such acts."

"4. The plaintiffs have shown the legal and valid title to the lands in question, and that title cannot be defeated, unless you find from the evidence that the defendants have been in the open, notorious and continuous and adverse possession of the lands for a period of seven years."

These instructions were refused and are made the bases of the 13th, 14th, 15th and 16th assignments of error.

The first instruction was supported by evidence uncontradicted showing the invalidity of the assessment of the lands in that they were assessed in the aggregate several sections in one assessment contrary to the provisions of the Act, Chapter 4322, Laws of 1895. See

McKeown v. Collins, 38 Fla. 276, 21 South. Rep. 103; Levy v. Ladd, 35 Fla. 391, 17 South. Rep. 635. That no notice of the application for the tax deed was forwarded by the Clerk to the owner or the person last paying taxes thereon. Hightower v. Hogan, 69 Fla. 86, 68 South. Rep. 669; Clark-Ray-Johnson Co. v. Williford, *supra;* McLeod v. Williams, *supra;* Stephens v. Futch, 73 Fla. 708, 7 4South. Rep. 805.

If the four-year statute of limitations provided by Section 64 of Chapter 4322, Laws of 1895, does apply to a tax deed issued under the provisions of Chapter 4888, Laws fo 1901, there was no such actual possession of the land by the purchaser at such sale as the statute contemplates.

When a private person acquires a tax certificate his rights are to be determined so far as the certificate is involved by the laws in force at the time the certificate is required, and it is also true that the deed issued under such certificate possesses only such virtues and confers only such rights upon the holder as the statute in force at the time and under which it issued confers. See Clark-Ray-Johnson v. Williford, *supra.* The defendants took possession of a portion of the land in 1912, but under the deed from the Franklin County Lumber Company which acquired such title as the tax deed conveyed. For the purpose of invoking the four year statute of limitations under Chapter 4322, *supra,* it cannot be maintained that the defendants were the purchasers at the tax sale in 1901.

The second instruction should have been given because there was shown no adverse possession of the East half of Section one even for the period of four years. The

third instruction should have been given for the reasons already given in this opinion.

For the errors pointed out the judgment is reversed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND WEST, J. J., concur.