DELAWARE SECURITIES CORPORATION v. ADDIE W. KAHN, *et al.*

175 So. 779.
Opinion Filed July 31, 1937.
Petition for Rehearing Denied September 29, 1937.

*Raymond C. Alley* and *Loftin, Stokes & Calkins,* for Plaintiff in Error;

*Joel W. Massie,* for Defendants in Error.

BUFORD, J.—The writ of error brings for review judgment on a directed verdict in favor of the defendant in an ejectment suit.

This is the second appearance of the case in this Court. See Otto H. Kahn v. Delaware Securities Corporation, 114 Fla. 32, 153 Sou. 308. The issues are stated in the former opinion so that it is not necessary to state them here again, although it is pertinent to restate here a part of what was stated in that opinion, which is as follows:

"The deed of conveyance to Otto H. Kahn from Joseph Speidel, Jr., and his wife is dated February 3, 1930, and purports to convey that portion of Lot 1 of Leighton's Subdivision of the Indian Mound Tract lying east of the 'County Road as now established and in use.' The boundaries as recited in the deed follow the north line of Lot 1 to the Ocean a distance of 422.66 feet, thence southerly meandering the waters of the ocean to a point where the south line of the lot continued eastward would strike the waters of the Atlantic Ocean, thence westerly along a continuation of the south line of Lot 1, 428.15 feet more or less to the center line of the county road as now in use, and thence northerly to the point of beginning. That deed was admitted in evidence without objection, and is plaintiff's exhibit No. 26.

"Now, Leighton had conveyed Lot No. 1 in 1901, prior to the boundary agreement, to Mary Leighton. Mary Leighton conveyed the same in March, 1923, to Joe Speidel who conveyed as stated to Otto H. Kahn. All of these conveyances describe the property as laid out by Knowlton.

"The Knowlton plat does not indicate the angle on which the north line of Lot 1 ran from Lake Worth to the Atlantic Ocean. In fact none of the plats made from surveys by different engineers are as self-explanatory as they should be. The iron pin on the lake shore which marked the northwest corner of the lot was located but the line running east from that point to the ocean is the one in dispute.

"The line of the Birchfield survey is taken and the north line of the lots as run parallel to the Birchfield line places the disputed territory in lot numbered 1, but if the north line of the lot lies eight or nine feet to the north the disputed tract lies in Lot numbered 2.

"The deed of conveyance to the Delaware Securities Corporation from Amy Guest and her husband Frederick Guest, dated May 21, 1921, about nine years before the conveyance to Kahn, conveys those parts of Lots 2 and 3 of Leighton's subdivision of the Indian Mound Tract lying east of the county road two hundred feet wide from the north line of lot 4 to the south line of lot 1 and extending to the Atlantic Ocean. The purpose of the conveyance being to convey all of those parts of lots 2 and 3 of the subdivision of the Indian Mound Tract lying east of the county road.

"Now the iron pins originally sunk into the ground to mark the boundary lines of the lots on the ocean side could not be found so the question arises in locating the northern boundary line of Lot 1 what direction exactly does that line follow from the northwest corner of the lot to the

ocean? Difference between the parties as to the location of that line gave rise to the controversy in this case.

"Melville Spencer was introduced as a witness for the plaintiff and testified that he witnessed the 'Potter' survey and that the north line of Lot 1 ran to the north side of the Indian Mound in that lot. The jury found that fact to be true and the plaintiff obtained the verdict.

"The plaintiff in error by his counsel challenges the sufficiency of the evidence to support the verdict as well as' the competency of the evidence of Mr. Spencer to identify the northern line of Lot.1.

"It is true that a plaintiff in ejectment must recover upon the strength of his own title and must show title in himself and a right to the possession of the land sued for in the proceedings. See Burt v. Florida Southern R. Co., 43 Fla. 339, 31 South. Rep. 265; Phillips v. Lowenstein, 91 Fla. 89, 107 South. Rep. 350; Ropes v. Minshew, 51 Fla. 299, 41 South. Rep. 538; Florida Finance Co. v. Sheffield, 56 Fla. 285, 48 South. Rep. 42; Skinner Mfg. Co. v. Wright, 56 Fla. 561, 47 South. Rep. 931; Clark v. Cochran, 79 Fla. 788, 85 South. Rep. 250.

"There is also another part of the rule recognized in all the cases upon the subject in this jurisdiction which is to the effect that the plaintiff cannot recover even against one without title unless the plaintiff shows title or prior possession. Now, the question of title to Lot 1 is eliminated in this case, as well as the question of title to Lot 2. The plaintiff claims no title to Lot 1. It claims right to possession of a strip of land which is said to be within the boundaries of Lot 2 and not within the boundaries of Lot 1 owned by the defendant.

"Both plaintiff and defendant admit that the defendant is in possession of that strip as constituting a part of Lot 1. Whether the coveted strip of land is within the boundaries

of Lot 2 is the burden which the plaintiff had to carry. We have not discovered any evidence in the record that the plaintiff had possession of that particular strip of land and was ousted of the possession by the defendant, but it is admitted that if it lies within the boundaries of Lot 2 the plaintiff should recover.

"Now the Knowlton map, while it does not show the angle which the north and south boundary lines of the map took, yet it shows the north line as it traverses the Indian Mound to be near the center of the mound.

"As both lots 1 and 2 were conveyed to the respective owners with reference to the Knowlton map the lines as indicated on such plat or map are conclusive upon the parties. Those lines constitute the description by which the limits of the grant may be ascertained.

"The grantor adopted those liens and the grantee takes title in accordance with the boundaries so identified.

"In the case of Andreu v. Watkins, 26 Fla. 390, 7 South. Rep. 876, this Court, speaking through Mr. Chief Justice Raney, said that 'Where one deed refers to another or to a map or plan of a survey for a description, the deed, map or plan referred to becomes as much a part of the instrument making the reference as if actually copied into it.' See also East Coast Lumber Co. v. Ellis-Young Co., 55 Fla. 256, 45 South. Rep. 826.

"The plaintiff's deed to Lot 2 described the northern boundary of the lot as the southern boundary of Lot 1, according to a plat thereof as recorded in a certain book of the Public Records of Palm Beach County. The deed to the defendant likewise referred to that plat and the south line of Lot 1 of the Indian Mound Tract became the dividing line between Lots 1 and 2.

"The burden was on the plaintiff to show that the strip described in the declaration was within the description of

the parcel of land conveyed to the plaintiff by the deed of conveyance."

The record shows that the trial judge in directing the jury to return a verdict in favor of the defendant said:

"This suit was tried here a few years ago and the plaintiff received a verdict at that time. It went to the Supreme Court in Tallahassee and the Supreme Court reversed it and sent it back, and held in effect that the probative force of the evidence was not sufficient to entitle the plaintiff to recover.

"Now viewing this evidence again, while the plaintiff has supplied some of the deficiencies pointed out by the Supreme Court, I am of the opinion the evidence itself is not of sufficient probative force to entitle the plaintiff to a verdict. I do not think from the evidence you can with any reasonable degree of certainty, definitely locate the north property line which is in question here, in accordance with the contention of plaintiff. I, therefore, direct you to sign this verdict, which finds for the defendant, and disposes of this case."

There are numerous assignments of error, but we think it only necessary to discuss a few of them. In fact, the plaintiff in error has concisely stated the question to be determined on this writ of error as follows:

"Where there is a dispute between the owners of adjoining Lots as to the boundary line dividing the said lots as it was run on the ground, and where the permanent monuments shown on plat, according to which both lots were conveyed to the parties, are no longer in existence on the ground at one terminus, of the lot lines in dispute, does not the following synopsis of evidence have sufficient probative force to make out a prima facie case for a jury, viz.:

"(a) The positive and undisputed testimony of a man

84 years old who formerly owned the land, who saw the line as originally run by a former survey, who actually saw the permanent monument marking the eastern terminus of the line on the ground, and who saw where the line was run on the ground with reference to a natural object sketched on the plat referred to in the respective deeds of the parties;

"(b) The testimony of expert surveyors that the sketch as located on the plat, purporting to show an Indian burial mound, was not and could not be considered in reckoning the location of the line designated on the plat as it was run on the ground;

"(c) The testimony of expert surveyors who testified that in endeavoring to locate the line on the ground, according to the said plat, they took into consideration and followed every known permanent monument in existence, the information given them by the old settler referred to in subparagraph (a) hereof, the respective deeded distances of the properties in the entire subdivision shown on the plat; and by way of explanation of the dispute concerning the dividing line of the lots in question, testified as to the encroachment of a property owner whose lands lie north of the subdivision in question but within the Government lots out of which the original owners conveyed the tract of land which was subsequently subdivided and shown on a plat; and the testimony of an expert surveyor that, after locating the permanent monument at the western terminus of one of the lot lines, he surveyed the lots by running a 'straight line' from the known monument to the eastern terminus of the lot line, which said lot line, when located on the ground, constituted a monument itself for the location of the other lot lines of the lots in question and consequently the strip of land in dispute as described in the plaintiff's declaration in ejectment;

"(d) The undisputed evidence of the plaintiff's witnesses that the plaintiff and its predecessor in title had its lot surveyed prior to the conveyance to the defendant and his predecessor in title, and located the dividing line between the lots in question and built a fence on said line and cleared the land on the plaintiff's lot up to the said fence for a period of some six years before unknown parties, but impliedly the defendant, tore down the plaintiff's fence and built a wall which took in the strip of land described in the plaintiff's declaration."

In the former opinion we said: "Whether the strip in controversy lies in Lot numbered 2 or Lot numbered 1 presents merely a question of boundaries."

In Aspinwall *et al.,* v. Gleason, 97 Fla. 869, 126 Sou. 270, we said:

"Whenever call in field notes of survey is irreconcilable with other calls of field notes or grant by which survey may be located, and where call appears to have been inserted by mistake, it may be disregarded.

"Where there is variance between the plat and the field notes of the original survey of public lands, the former must control.

"In suit involving question of boundaries, location of survey upon ground in fact to be ascertained by jury.

"Whether north line of section cross river at point south of island, as shown by statement in field notes of government survey of part of section, or actually crossed island as indicated by later government plat of island, held question for jury, where call in field notes was irreconcilable with other calls."

In United States v. State Investment Co., *et al.,* 264 U. S. 208, 68 L. Ed. 639, the Supreme Court of the United States said:

"The questions where the line run by a survey lies on

the ground and whether any particular tract is on one side or the other side of that line, are questions of fact."

To like effect is Mann v. Archbell, *et al.,* 186 N. C. 78, 118 S. E. 911; Geddie v. Williams, 189 N. C. 333, 127 S. E. 423.

There was introduced in evidence in the first trial and again in the second trial a plat known as the A. L. Knowlton Plat. This is the plat referred to as the Knowlton Plat in the former opinion. The certificate on that plat is as follows:

"I, A. L. Knowlton, do hereby certify that I have surveyed portions of Lots No. 3 and 4 of Section 10 and portion of Lot No. 2 of Section 11, Tp. 43 S. R. 43 E., according to the legal subdivision as surveyed by George Potter, County Surveyor, and that I have subdivided the same into lots all of which I correctly represent upon the accompanying map."

That plat or map shows what is purported to be an Indian Mound crossed by the northern line of Lot 1. So far as is shown by any evidence that Indian Mound is not used as a call or monument at any place in either survey. From the record before us, it appears that the position of this Indian Mound, as shown on the plat, was given weight and probative force which it may not deserve. We have not found in the record a description of the area of this Indian Mound but, by taking the plats introduced with the scale upon which these drawings were based, we find that the Indian Mound, according to the plat, is about 85 feet north and south and that between 30 and 35 feet of the Indian Mound extends north of the north line of Lot 1 and that the north line of Lot 1 is about 8 or 10 feet north of the center of the Indian Mound. All of the evidence shows that the location and extent of the Indian Mound as shown

on the plat is not according to its actual area and location on the ground.

On the last trial in which judgment was rendered, to which the writ of error here is addressed, the plaintiff in the court below, plaintiff in error here, supplied by the testimony of Mrs. Amy Guest and one J. F. Riley that the plaintiff went into actual possession of the strip of land in dispute by constructing a fence on the north line of the line of her property, Lot 2, and remained in possession thereof under that fence until sometime about December, 1927, or January, 1928, when the fence was torn down; that she caused coconut trees to be planted along the line of fence and that she kept the land cleared up to the line of the fence from 1925 to 1930 when Mr. Kahn's wall was built so as to enclose with his property the strip of land here in dispute. This testimony was not disputed or controverted and, therefore, the deficiency that possession in the plaintiff prior to possession by defendant had not been shown was supplied and overcome. In addition to this, the plaintiff supplied the testimony of two civil engineers, Butler and Rockway. Mr. Butler testified in effect that because there was no scale on the plat showing how many feet the supposed Indian Mound extended over the line, that one could not from the plat alone relocate the line on the ground. He did state, however, that the north line could be relocated. Mr. Butler's statement in this regard was as follows:

"Witness: If I could relocate the north line from the data on this plat? Yes, of course, I could; it gives the bearings and distances from known points.

"Q. Can you relocate the north line on the ground in relation to where it strikes what you call an Indian Mound?

"Mr. Massie: Object to the question.

"The Court: Objection overruled.

"Exception by Defendants.

"Witness: No, I couldn't do that; there is no scale on the mound to show how many feet it projects over the line."

Mr. Brockway testified that he made a survey for the purpose of locating the north line of Lot 2 of Indian Mound subdivision. (That is the line between the defendant's property and the plaintiff's property.) He explained in detail how he made that survey. Then he identified a plat which he testified was made under his supervision to truly and correctly represent the distances found by him and the angles found by him in that survey. The plaintiff offered the plat in evidence. It was objected to and the objection was overruled. Thereafter, the following occurred:

"Mr. Salisbury: By the map being offered in evidence by the plaintiff, prepared under the supervision of George S. Brockway, from actual surveys made by him and deeded distances taken from the public records and from locations thereafter pointed out by M. E. Spencer, the plaintiff proposes to show that the true line of the north line of lot 2 and the south line of lot 1 is shown correctly as on the Knowlton map, which runs from a point on the east line of the right of way of the County Road according to a plat of said right of way on file in the County Road plat book No. 1, pages 13 to 17, inclusive, of the Palm Beach County Records, which point is 1474.5 feet north of the south line of Government Lot 2, Section 11, Township 43 South of range 43 east, Palm Beach County, Florida; thence northerly along said east line of the right of way of County Road a distance of 9.5 feet to a point, thence easterly making an angle with the said east line of the right of way of the County Road measured south to east 88 degrees, 36 minutes, a distance of 545 feet more or less,

to the waters of the Atlantic Ocean a distance of 12.55 feet to a point, thence westerly a distance of 545 feet more or less to the point of beginning.

"That the plaintiff will, by said exhibit so offered, show that the actual deeded distance between known lines—the south line of Lot 2 of Section 11, to the north line of Lot 2 of Section 11, Township 43 South of range 43 east—equals the actual distance on the ground between said known point, while the actual survey from the north line of lot 2, section 11, Township 43 South of range 43 east, to the north line of Indian Mound subdivision checks with the deeded distance between said points, and likewise an actual survey from the south line of Government lot 2, Section 11, Township 43 south of range 43 east, to the south line of Indian Mound subdivision checks with the deeded distance as set forth in the Public Records of Dade and Palm Beach Counties.

"That an actual survey on the ground from the south line of Indian Mound subdivision to the north line of Indian Mound subdivision checks with the Knowlton plat as to deeded distances thereon, and with the Public Records of Dade and Palm Beach Counties:

"Plaintiff will further show by said proffered exhibit that the actual distance from the north line of the Leighton tract to the north line of lot 2 of Section 11, as established, equals the north and south widths of each tract of that conveyed by Spencer out of lot 2 of Section 11 aforesaid; that a survey on the ground shows that the property as actually located on the ground, beginning with the north line of lot 2 of Indian Mound tract, beginning with a line between lots 1 and 2 of Indian Mound tract, as shown on the map, shows a total width equal to the deeded distances, but that the north piece on the map being the piece conveyed by Spencer to Untermeyer, is actually located on the

ground, and having in it 659.21 feet of frontage, measured from north to south; whereas, the deed thereof from Spencer to Untermeyer only contained 647 feet, and it is proffered to establish the theory of the plaintiff's case, that the boundary line dispute is due to an encroachment on lot 1 of the Indian Mound tract from the north by the owners of the tracts north of lot 1 of the Leighton subdivision; in short, to show that the north line of the Balbach property is approximately 12 feet south of where it should properly be, accordingly to the deeds; that the north line of the Brelsford property as conveyed to Kahn, and located on the ground, has been moved down 12 feet from its true location, and that an attempt to provide 150 feet of frontage of the Brelsford tract as conveyed to Kahn, there has been an encroachment by Kahn himself over the northern boundary of lot 1 of the Leighton tract, and in an attempt by Kahn to make up his full distance from north to south, he has in turn encroached on lot 2 of the Leighton tract.

"Mr. Massie: The defendants object to the proffer of said plat for the reasons already stated, and for the further reason that it is the law of the case that plaintiff is confined to showing the land according to the record map of Indian Mound tract, which this exhibit on its face fails to do.

"The Court: Objection sustained."

Now, it clearly appears from the objection as framed that counsel for the defendant and the court misconstrued the meaning of the opinion of this court hereinbefore referred to. It was intended to hold in that opinion as the law of the case that "plaintiff is confined to showing the land according to the record map of Indian Mound tract," but it was not held that this could not be proved by other evidence than the map itself.

Then the following occurred:

"Did you likewise run the line on the south boundary of Leighton's subdivision of Indian Mound tract?

"A. I have run that line, yes sir.

"Q. I hand you herewith plaintiff's declaration and ask you to state based on the knowledge you have acquired from the survey you spoke of, where the land described in that declaration is located?

"Mr. Massie: Object to this question on the ground it calls for a mere conclusion on the part of the witness; he has not shown the facts on which that conclusion is based; and on the further ground, it is an effort to vary the recorded plat of Indian Mound tract.

"The Court: Objection sustained."

The objection was erroneously sustained. The witness had qualified as an expert civil engineer and land surveyor. He testified that he had run the line on the south boundary of Leighton's subdivision of Indian Mound tract. It was then competent for him to testify whether or not he could, from the description contained in plaintiff's declaration and from the knowledge acquired from the survey which he had made determine where the land described in that declaration is located. The answer to that question was the answer which might terminate the issues of this suit. If he as a surveyor could take the description in that declaration and from that description and a survey which he had made on the ground locate the lands described in the declaration, it was proper for him to do so because if he could locate the lands described in that declaration then he could point out where the northern boundary of that land was.

The record then shows that the following occurred while Mr. Brockway was yet on the stand:

"Q. Do you know the point on the ground and on the

east line of the County Road as now laid out and in use is 1474½ feet north of the south line of Sections 10 and 11?

"A. Yes sir.

"Q. Have you surveyed a tract beginning at a point on the east line of the County Road 1474½ feet north of the south section line of section 11, thence north 9½ feet, thence east making an angle with the east side of the right of way of the County Road, measured from south to east, of 88 degrees, 35 minutes, a distance of 545 feet more or less to the waters of the Atlantic Ocean; thence along the waters of the Atlantic Ocean a distance of 12.55 feet; thence westerly a distance of 545 feet more or less to the point of beginning?

"A. I have.

"Q. Will you tell the jury whether or not that property lies between the point where the Delaware Securities Corporation had possession of its property in the town of Palm Beach in 1924, when you made your survey, and the point of the line on which Mr. Otto Kahn took possession of his property in 1930?

"Mr. Massie: Object on the ground the question is not confined to the location, according to the recorded map made by Knowlton, and on the further ground the property described in the declaration is begun at a certain point on the right of way map on the County Road, on file in County Plat Book, and said County Road Plat has never yet been put in evidence by the plaintiff.

"The Court: Objection sustained.

"Exception by plaintiff.

"Q. Do you recall that in 1924, and subsequently until 1928, a fence was located along the north line of Delaware Securities Corporation's property?

"Mr. Massie: Objected to as calling for a conclusion.

"The Court: Objection overruled.

"Witness: I. remember the fence; I am not sure of the date, I don't know when it was removed.

"Q. Will you state whether or not the property described in the description which I just read to you, and which you state you have surveyed, lies between the location of that fence and the south line of the improvements established by Otto Kahn on his property?

"Mr. Massie: Objected to as calling for a conclusion, and on the further ground, the location of the fence has not been shown; the witness cannot answer.

"The Court: Objection overruled.

"Witness: It does.

"Q. Mr. Brockway, you stated that you examined the records of the conveyances made by Mr. Spencer to find and ascertain the widths of the property which he conveyed out of the Government lot in Section 11; is that correct?

"A. That is correct.

"Q. I will ask you whether in the examination of such records you examined a deed from Melville E. Spencer and Eleanor J. Spencer to Charles C. Haight, dated April 30, 1892?

"Mr. Massie: The defendant says that this property is not in Leighton's Indian Mound tract, and that the deeds below and above the subdivision are not important or admissible in evidence in determining this suit, which depends upon a boundary in Indian Mound tract according to the recorded plat, and therefore object to the admission of said instrument in evidence.

"The Court: Objection sustained.

"Exception by Plaintiff.

"And thereupon Mr. Alley stated to the court that plaintiff proposed to produce and offer in evidence certified copies of eleven (11) deeds for the purpose of establishing

the amount of property conveyed by Melville. E. Spencer out of Government Lot 2 of Section 11, Township 43 South, Range 43 East, for the purpose of confirming the testimony of the witness, Spencer, as to the location on the ground of the north line of the property which he conveyed to William Leighton and to corroborate and confirm Plaintiff's contention as to the location of the north line of Lot 2 of the Leighton tract. And on the suggestion of the court and consent of counsel, all of said certified copies of deeds were produced and offered in evidence at one time, having been first marked for identification as Plaintiff's exhibits numbers 32 to 42, respectively, copies of which are as follows:"

Then the exhibits numbers 32 to 42, inclusive, referred to are copied into the record. They were objected to and objection was sustained. This was error because the proffered evidence tended to prove a material fact, to-wit, the location of the disputed line.

Then the following occurred:

"Q. Mr. Brockway, do you know the location on the ground of the north line of Lot 2 of Leighton subdivision of the Indian Mound tract?

"A. Yes sir.

"Q. What have you to say as to where the north line of lot 2 of Leighton subdivision runs with reference to the property described in the declaration which I just read you?

"Mr. Massie: Object to that unless it is confined to the line as it appears on the recorded plat.

"The Court: Objection overruled.

"Exception by defendants.

"Witness: They are one and the same line."

We think enough has been said to point out the errors made by the Court in excluding evidence tending to show the location of the line on the ground between Lot 2 owned

by the plaintiff and Lot 1 owned by the defendant. Not only was error committed in excluding evidence along the line above pointed out, but there was sufficient evidence admitted tending to show the location of the line on the ground to go to the jury for consideration in returning a verdict determining that issue, which is the main issue in this case.

For the reasons stated, the judgment should be reversed and the cause remanded for new trial.

It is so ordered.

WHITFIELD, TERRELL, BROWN and CHAPMAN, J. J., concur.

ELLIS, C. J., dissents.