## THOMAS LeCOMPTE v. HENRY LUEDERS.

*Boundaries—Town lots.*

This case is ruled by *Flynn v. Glenny*, 51 Mich. 580, where it was held that—

*a*—"Purchasers of town lots have a right to locate them according to the stakes which they find planted and recognized, and no subsequent survey can be allowed to unsettle their lines."

*b*—"The question afterwards is not whether the stakes were where they should have been in order to make them correspond with the lot lines as they should be if the platting were done with absolute accuracy, but it is whether they were planted by authority, and the lots were purchased and taken possession of in reliance upon them. If such was the case, they must govern, notwithstanding any errors in locating them."

Error to Muskegon. (Dickerman, J.) Argued February 18, 1892. Decided March 4, 1892.

Trespass. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*J. E. Sullivan,* for appellant.

*DeLong & O'Hara,* for defendant.

LONG, J. This action of trespass was commenced in

justice's court, where plea of title was interposed, and
the cause certified to the circuit.   Upon trial there,
defendant had verdict and judgment.

The parties are the owners of adjoining lots of land
in McGraft & Montgomery's addition to the village of
Lakeside, now a part of the city of Muskegon.   Plaint-
iff owns and is in possession of lot 2, block 5, and the
defendant owns and is in possession of lot 1 of the same
block.   The two lots adjoin, and the action grows out of
a dispute as to the true boundary line between the lots.

Block 5, with other property, was platted by McGraft
& Montgomery as an addition to the village of Lakeside
in the year 1879.   Mr. John B. Smalley made the sur-
veys from which the plat was made, and drove cedar
stakes at that time, indicating the corners of the lots.
During the fall of 1879, Charles H. De Puy—then in
the employ of McGraft & Montgomery—built a fence
according to stakes then standing, indicating they had
been placed by a surveyor, inclosing all of said block
excepting two lots immediately south of those in contro-
versy.   The next spring, lot 1 was purchased by a Mr.
Ault from McGraft & Montgomery, and it is from him
that the defendant claims title to that lot by mesne con-
veyances.   After Ault purchased, Mr. De Puy, who was
still in the employ of McGraft & Montgomery, built a
line fence between the lots 1 and 2.   This fence was
partly destroyed by fire upon two different occasions,
but built again upon the same line, the posts being put
in the same place as the partly burned posts.   The last
fence was built of upright boards the whole length of
the line between the two lots, but on the same line occu-
pied by the first fence built there.   This fence was
standing at the time defendant, Lueders, purchased lot
1.   The plaintiff purchased lot 2 in January, 1890, with
this high board fence still standing as the boundary

between the two lots.   Plaintiff went into possession under his deed, and, while so occupying lot 2, defendant, Lueders, who was making some repairs to a building on his lot, ordered his carpenters to remove this fence between the lots, which · they did, about three feet westward upon plaintiff's lot, thus fencing in with defendant's lot about three feet in width on the east side of plaintiff's lot.   Plaintiff had planted along the east side of his lot a quantity of strawberry plants, which defendant's carpenters took up, and put over further on plaintiff's lot.   It is for this trespass that this action is brought. Upon the trial the court submitted the question to the jury as to where the true boundary line was, and they found a verdict in favor of defendant.

Thirty assignments of error are contained in the record, based upon the rulings of the court during the trial, the giving and the refusing to give certain requests to charge, and the charge of the court as given.   We do not deem it important to discuss any of them except the refusal of the court to give the plaintiff's third request to charge, as follows:

" If you find that on the first survey stakes were set at the terminations of the lines between the lots front and rear, and a fence was built between the lots while these stakes were in place, on the line indicated by these stakes, and if you find from the evidence that a fence was continued on said line until the parties to this suit bought the two lots, then I charge you as a matter of law that that fence was the boundary line between Le Compte's and Lueder's lots; and if you find from the evidence that Henry Kooi, the carpenter working for Lueders, pulled down the fence, or any part of it, and placed it on the Le Compte lot, then I charge you that your verdict must be for the plaintiff."

This request embodies the only question involved in this controversy, and should have been given.   The case

90 MICH.—32.

falls directly within the ruling of this Court in *Flynn v. Glenny*, 51 Mich. 580. It was expressly held in that case that purchasers of town lots have the right to locate their lot lines according to the stakes set by the platter of the lots, and that no subsequent survey can be alleged to unsettle such lines. It was said by Mr. Justice COOLEY in that case:

" The question afterwards is not whether the stakes were where they should have been in order to make them correspond with the lot lines as they should be if the platting were done with absolute accuracy, but it is whether they were planted by authority, and the lots were purchased and taken possession of in reliance upon them. If such was the case, they must govern, notwithstanding any errors in locating them.".

The judgment must be reversed, with costs, and a new trial ordered.

The other Justices concurred.