OTTO H. KAHN v. DELAWARE SECURITIES CORP.

153 So. 308.

Division A.

Opinion Filed February 19, 1934.

Petition for Rehearing Denied March 21, 1934.

*Joel W. Massie,* for Plaintiff in Error;

*Chillingworth & Simon* and *Baker & White,* for Defendant in Error.

ELLIS, J.—This case is one of a boundary line dispute. The question is whether the narrow strip of land described in the declaration lies in a lot 1 or lot 2 of a subdivision of land known as Indian Mound Tract lying in Sections 10 and 11 of Township 43 South, Range 43 East. The section line between Sections 10 and 11 is about 540 feet west from the waters of the Atlantic Ocean. The greater part of the "Indian Mound Tract" therefore lies between the section line and the waters of Lake Worth on the west. The distance from Lake Worth to the line between the two sections is about 1,750 feet, according to the "Knowlton" survey, a map of which was introduced in evidence.

William Leighton, Jr., in 1890, acquired by deed from Melville, Valorus and Jane Spencer a strip of land in Sections 10 and 11, north of the south line of Lot 3, Section 10, and that line extended to the ocean, and lying between the waters of the lake and the ocean three chains and seventy-nine links wide and thirty-four chains and twelve links long to the ocean, which, expressed in lineal feet, is 250 14/100 feet wide and 2,251 92/100 feet long. The Knowlton map shows the east and west line to be slightly longer.

The Delaware Securities Corporation, which was the plaintiff below in this action of ejectment, and Otto H. Kahn, who was the defendant, both claim under the Leighton title, so no question of adverse title is involved.

The corporation owns lot numbered 2 and the defendant has title to lot numbered 1 of the subdivision. The two lots lie contiguous to each other along the entire east and west line dividing them.

Lying between the waters of the Atlantic Ocean and the section line between Sections 10 and 11 there is an "Indian Mound" about half way between the two points. It lies on the northern side of lot numbered 1 and almost entirely

within that lot. Whether the northern boundary line of lot numbered 1 runs on the northern side of that mound or across its crest or topmost point is the question which gave rise to this controversy.

The plaintiff Delaware Securities Corporation brought its action in ejectment against Otto H. Kahn for the possession of a rectangular strip of land about 545 feet long, extending from the east line of the right-of-way of the county road to the Atlantic Ocean. The west end of the strip is nine and a half feet wide and the east end of it is twelve and fifty-five one-hundredths feet wide.

The boundaries of the strip of land contended for in this litigation are given in the declaration as beginning at a point on the east line of the county road, according to a certain plat, 1,474½ feet north of the south line of Government Lot 2, Section 11, Township 43 South, Range 43 East, in Palm Beach County; thence run north nine and a half feet; "thence easterly, making an angle with the said east line of the right-of-way of the county road, measured from south to east, of 88° 35', a distance of 545 feet, more or less, to the waters of the Atlantic Ocean," thence southerly along the "waters of the Atlantic Ocean, a distance of 12.55 feet to a point," thence westerly "a distance of 545 feet, more or less, to the point of beginning."

It is estimated that the area of the strip of land contended for is about 138/1000 of an acre.

It will be seen that the strip of land lies in the eastern end of Lot 1 or 2 accordingly as it may be found by the boundary lines of the two lots as they were laid out on the surface of the earth to lie in the one lot or the other.

The defendant pleaded not guilty. The parties went to trial and the jury found for the plaintiff and judgment was duly entered upon the verdict.

At the close of the evidence each party moved the court for a directed verdict in his behalf which motions were denied. The court then instructed the jury as to the law of the case and the verdict was rendered for the plaintiff.

The defendant moved for a new trial and the motion was denied. The motion contained the usual grounds that the verdict was contrary to the evidence and the law and that the court erred in refusing to direct a verdict for the defendant and erred in admitting in evidence certain plats in plaintiff's behalf "contradictory to the plat in evidence on which the plaintiff's declaration was based." The fifth ground was that the court "erred in admitting and/or rejecting certain evidence in the trial of the case material and relevant to the issues over the objection of the defendant."

That ground of the motion was too general and indefinite to direct the trial court's attention to the particular error alleged by the mover to have been committed. The purpose of a motion for a new trial, which in the early history of the common law was not allowed (Warner v. Goding, 91 Fla. 260, 107 South. Rep. 406), is to specifically direct the attention of the trial court to the alleged error if committed by him in order that he may reconsider his ruling and correct it if he deems proper to do so, but to state in a motion that the court admitted or rejected evidence and did both over the defendant's objection which evidence was "material to the issues" introduce an element of vagueness into the point sought to be presented which cannot be easily overcome if at all.

The plaintiff seeks to reverse the judgment on a writ of error which was returnable to this Court in August, 1932, and orally argued here on October 31, 1933.

Whether the strip in controversy lies in lot numbered 2 or lot numbered 1 presents merely a question of boundaries.

There have been two surveys of the tract. More correctly speaking, there has been one survey of the subdivision and one resurvey of the subdivision, but the controversy arises over a dispute between the two surveyors as to the correct location of the governmental lines defining the fractional Sections 10 and 11 of Township 43 South, Range 43 East.

In March, 1895, A. L. Knowlton, a civil engineer, subdivided Lots 3 and 4 of Section 10 and a portion of Lot 2 of Section 11 as surveyed by George Potter, County Surveyor, in 1890, and subdivided the same into lots as shown by plaintiff's exhibits No. 10 and exhibit No. 22. In 1893, a man named Birchfield attempted to relocate the lines of the survey made by Potter. There was a discrepancy between Potter and Birchfield as to the location of the east and west lines of the government lots. That discrepancy gave rise to litigation resulting in the acceptance by the court of the "Birchfield" survey which located the east and west lines seventy-three feet south of the "Potter" survey.

But the Spencers had sold to Leighton according to the Potter survey and had delivered to Leighton possession of the land as laid out by Potter. So a boundary agreement resulted in abrogating the Birchfield survey and recognizing the Potter survey. That transaction was evidenced by an agreement between M. E. Spencer and his wife and William Leighton in which the Spencers agreed never in anywise to disturb or attempt to disturb any of the lines or boundaries by which said tracts were sold and designated as computed by and from the said "Potter" survey but would warrant and assure unto the said Leighton and his heirs and assigns, to Edward Balbach and E. M. Brelsford and their heirs and assigns, the several tracts and measurements of lake front so marked off and improved by them without contest, molestation, eviction or disturbance on account of said change

of the supposed boundaries by said survey and decree. That instrument was dated March 22, 1906, and on the same day Balbach and Brelsford signed a statement in writing that they would maintain the agreed lines to their several tracts that are "now in force and adopted as the lines to the same, by reason of 'Potter' survey or measurement."

Those instruments were recorded in March, 1906, and introduced as evidence for the plaintiff without objection. They appear in the record as plaintiff's exhibit No. 21.

The deed of conveyance to Otto H. Kahn from Joseph Speidel, Jr., and his wife is dated February 3, 1930, and purports to convey that portion of Lot 1 of Leighton's Subdivision of the Indian Mound Tract lying east of the "County road as now established and in use." The boundaries as recited in the deed follow the north line of Lot 1 to the ocean, a distance of 422.66 feet, thence southerly meandering the waters of the ocean to a point where the south line of the lot continued eastward would strike the waters of the Atlantic Ocean, thence westerly along a continuation of the south line of Lot 1, 428.15 feet more or less to the center line of the county road as now in use, and thence northerly to the point of beginning. That deed was admitted in evidence without objection, and is plaintiff's exhibit No. 26.

Now, Leighton had conveyed Lot No. 1 in 1901, prior to the boundary agreement, to Mary Leighton. Mary Leighton conveyed the same in March, 1923, to Joe Speidel who conveyed as stated to Otto H. Kahn. All these conveyances describe the property as laid out by Knowlton.

The Knowlton plat does not indicate the angle on which the north line of Lot 1 ran from Lake Worth to the Atlantic Ocean. In fact none of the plats made from surveys by different engineers are as self-explanatory as they should be.

The iron pin on the lake shore which marked the northwest corner of the lot was located but the line running east from that point to the ocean is the one in dispute.

The line of the Birchfield survey is taken and the north line of the lots as run parallel to the Birchfield line places the disputed territory in Lot numbered 1, but if the north line of the lot lies eight or nine feet to the north the disputed tract lies in Lot numbered 2.

The deed of conveyance to the Delaware Securities Corporation from Amy Guest and her husband, Frederick Guest, dated May 21, 1921, about nine years before the conveyance to Kahn, conveys those parts of Lots 2 and 3 of Leighton's subdivision of the Indian Mound Tract lying east of the county road two hundred feet wide from the north line of Lot 4 to the south line of Lot 1 and extending to the Atlantic Ocean. The purpose of the conveyance being to convey all of those parts of Lots 2 and 3 of the subdivision of the Indian Mound Tract lying east of the county road.

Now the iron pins originally sunk into the ground to mark the boundary lines of the lots on the ocean side could not be found so the question arises in locating the northern boundary line of Lot 1 what direction exactly does that line follow from the northwest corner of the lot to the ocean? Difference between the parties as to the location of that line gave rise to the controversy in this case.

Melville Spencer was introduced as a witness for the plaintiff and testified that he witnessed the "Potter" survey and that the north line of Lot 1 ran to the north side of the Indian mound in that lot. The jury found that fact to be true and the plaintiff obtained the verdict.

The plaintiff in error by his counsel challenges the sufficiency of the evidence to support the verdict as well as the

competency of the evidence of Mr. Spencer to identify the northern line of Lot 1.

It is true that a plaintiff in ejectment must recover upon the strength of his own title and must show title in himself and a right to the possession of the land sued for in the proceedings. See Burt v. Florida Southern R. Co., 43 Fla. 339, 31 South. Rep. 265; Phillips v. Lowenstein, 91 Fla. 89, 107 South. Rep. 350; Ropes v. Mnishew, 51 Fla. 299, 41 South. Rep. 538; Florida Finance Co. v. Sheffield, 56 Fla. 285, 48 South. Rep. 42; Skinner Mfg. Co. v. Wright, 56 Fla. 561, 47 South. Rep. 931; Clark v. Cochran, 79 Fla. 788, 85 South. Rep. 250.

There is also another part of the rule recognized in all the cases upon the subject in this jurisdiction which is to the effect that the plaintiff cannot recover even against one without title unless the plaintiff shows title or prior possession. Now, the question of title to Lot 1 is eliminated in this case, as well as the question of title to Lot 2. The plaintiff claims no title to Lot 1. It claims right to possession of a strip of land which is said to be within the boundaries of Lot 2 and not within the boundaries of Lot 1 owned by the defendant.

Both plaintiff and defendant admit that the defendant is in possession of that strip as constituting a part of Lot 1. Whether the coveted strip of land is within the boundaries of Lot 2 is the burden which the plaintiff had to carry. We have not discovered any evidence in the record that the plaintiff had possession of that particular strip of land and was ousted of the possession by the defendant, but it is admitted that if it lies within the boundaries of Lot 2 the plaintiff should recover.

Now, the Knowlton map, while it does not show the angle which the north and south boundary lines of the map took,

yet it shows the north line as it traverses the Indian mound to be near the center of the mound.

. As both Lots 1 and 2 were conveyed to the respective owners with reference to the Knowlton map the lines as indicated on such plat or map are conclusive upon the parties. Those lines constitute the description by which the limits of the grant may be ascertained.

. The grantor adopted those lines and the grantee takes title in accordance with the boundaries so identified.

In the case of Andreu v. Watkins, 26 Fla. 390, 7 South. Rep. 876, this Court, speaking through Mr. Chief Justice RANEY, said that "Where one deed refers to another or to a map or plan of a survey for a description, the deed, map or plan referred to becomes as much a part of the instrument making the reference as if actually copied into it. See also East Coast Lumber Co. v. Ellis-Young Co., 55 Fla. 256, 45 South. Rep. 826.

The plaintiff's deed to Lot 2 described the northern boundary of the lot as the southern boundary of Lot 1, according to a plat thereof as recorded in a certain book of the Public Records of Palm Beach County. The deed to the defendant likewise referred to that plat and the south line of Lot 1 of the Indian Mound Tract became the dividing line between Lots 1 and 2.

The burden was on the plaintiff to show that the strip described in the declaration was within the description of the parcel of land conveyed to the plaintiff by the deed of conveyance.

We do not discover in the evidence any effort to locate on the ground the south boundary line of Lot 1. An attempt was made by the evidence of Mr. Spencer to establish the northern line of the Lot 1 ten or eleven feet north of the line as it is shown on the Knowlton map where it is

shown passing through a point slightly to the north of the peak of the Indian mound.

We have examined the evidence as carefully as the conditions of work in this building permit, and are unable to say from that examination of the evidence that it was sufficient in probative force to warrant the jury in concluding that the northern line of Lot 1 should be considered as running ten or more feet to the north of the point where the map or plat shows it to lie in the vicinity of the Indian mound.

We have therefore concluded that the judgment should be reversed, and it is so ordered.

DAVIS, C. J., and TERRELL, J., concur.

WHITFIELD, P. J., and BUFORD, J., concur in the opinion and judgment.