49 So.2d 604 (1950)
AKIN et ux.
v.
GODWIN.
Supreme Court of Florida, Special Division B.
December 12, 1950.
Rehearing Denied January 13, 1951.
*605 H. Pierre Branning, Miami, for appellants.
E.F.P. Brigham and Thomas C. Britton, Miami, for appellee.
ROBERTS, Justice.
The defendant-appellants acquired title in 1914 to adjoining lots in the City of Miami, described as Lots Three and Four "of Block Fifty South, City of Miami, Florida, according to plat thereof made by A.L. Knowlton, C.E., and recorded in Plat Book `B' page 41 of the public records of Dade County, Florida." In 1927, the defendants executed a mortgage covering Lot Four, which mortgage was subsequently assigned to Mrs. Julia E. Ross and was thereafter, in 1928, foreclosed by her. The plaintiff, appellee here, deraigns her title from Mrs. Ross, who was the purchaser at the foreclosure sale.
Some time prior to the foreclosure of the mortgage, the defendants began the construction of a concrete building on Lot Three. The roof of a side porch of this *606 building was supported by three concrete pillars, which pillars were constructed on a line which was thought to be the boundary line between Lots Three and Four, as marked by a small iron stake embedded in the end of a concrete wall constructed along the front of Lot Four and ending at the supposed line of demarcation between Lot Four and Lot Three.
After the title to Lot Four was acquired by Mrs. Ross at the foreclosure sale, the property passed through several hands and was finally, in 1944, acquired by the plaintiff. In 1946, the plaintiff obtained from M.B. Garris, a civil engineer, a sketch of a survey of Lot Four made by him in 1936, which survey showed that the concrete pillars of the building erected on Lot Three encroached upon Lot Four a distance of about six inches at the front pillar and about 11 inches at the back pillar. The distance from the first to the third pillar was shown to be about 25 feet. The plaintiff thereupon filed this action in ejectment to establish her title and right of possession to this small strip of land, 25 feet in length and from 6 to 11 inches wide. Her suit also involved an encroachment in the rear of Lot Four, but we are not concerned, on this appeal, with the question of the rear encroachment.
The cause went to trial on the issues made by defendants' plea of "not guilty," their other pleas having been stricken upon motion of plaintiff. The jury rendered a verdict for plaintiff, finding therein that the plaintiff was the owner of Lot Four and that "the true quantity of the estate of the plaintiff is as shown in the Sketch Of Survey hereto attached and by this reference made a part hereof." The "sketch of survey" attached to the verdict was a sketch of the Garris survey, above referred to, which had been admitted into evidence as plaintiff's Exhibit No. 7, over the objection of defendants, and which had been submitted to the jury as a part of a form of verdict which the jury was authorized to  and did, in fact  return. The defendants' motion in arrest of judgment and motion for a new trial were denied, and judgment was entered for plaintiff, from which defendants have appealed.
Since a plaintiff in ejectment must recover upon the strength of his own title and must show title in himself and a right to the possession of the land sued for in the proceedings, see Kahn v. Delaware Securities Corporation, 114 Fla. 32, 153 So. 308, our only concern here is whether the plaintiff has carried her burden of showing that the strip of land occupied by the concrete pillars of defendants' building is within the boundaries of plaintiff's Lot Four. Both Lot Three and Lot Four were conveyed to their respective owners with reference to a plat made by A.L. Knowlton, C.E., in the year 1896 and duly recorded in the public records of Dade County, Florida. Since this plat is, then, as much a part of the deeds as if copied therein, see Routh v. Williams, 141 Fla. 334, 193 So. 71, and Kahn v. Delaware Securities Corporation, supra, the real question in this case is: What is the boundary line between Lots Three and Four, according to the Knowlton plat?
The plaintiff based her claim of title squarely on the Garris survey of Lot Four; and, as heretofore stated, the verdict and judgment were likewise based thereon. Mr. Garris testified that he made his survey by first ascertaining the block boundaries, as marked by the city monuments establishing the locations and boundaries of the streets on the four sides of Block Fifty; that he then pro rated "any excess of [sic] deficiency in said block," and that the sketch of Lot Four represented the true dimensions of that lot "as pro rated." It appears that the city monuments were established by the so-called Klyce survey undertaken by the City of Miami in 1914 or 1915 for the purpose of establishing the location and marking the boundaries of the city streets, but there is nothing in the record to show what monuments or methods were pursued by Klyce in making his survey.
The plaintiff also adduced the testimony of one Elmore Cormack, a registered civil engineer and surveyor in the employ of the Dade County Surveyor, in an effort to establish the accuracy of the Garris survey. Cormack's testimony showed, however, that he also used the city monuments established by the Klyce survey as the starting point in his survey, and he testified that his survey *607 did not necessarily "go back to the original Knowlton field notes."
It is apparent that, as evidence of the true boundary of Lot Four according to the Knowlton plat, both the Garris and the Cormack surveys suffer from the same infirmity, that is, neither made any effort to retrace the Knowlton survey, nor does it appear that either survey is in any way, either directly or indirectly, related to or tied in with the Knowlton plat, insofar as the exact location, on the ground, of the boundary lines of Lot Four is concerned.
In making a resurvey, the question is not where an entirely accurate survey would locate the lines, but where did the original survey locate such lines. Clark on Surveying and Boundaries, 2d Ed., Sec. 411, page 495; Kahn v. Delaware Securities Corporation, 114 Fla. 32, 153 So. 308; LeCompte v. Lueders, 90 Mich. 495, 51 N.W. 542; City of Racine v. Emerson, 85 Wis. 80, 55 N.W. 177; Dittrich v. Ubl, 216 Minn. 396, 13 N.W.2d 384. As stated in 8 Am. Jur., Boundaries, Section 102, page 819: "The object of a resurvey is to furnish proof of the location of the lost lines or monuments, not to dispute the correctness of or to control the original survey. The original survey in all cases must, whenever possible, be retraced, since it cannot be disregarded or needlessly altered after property rights have been acquired in reliance upon it." It is generally held, therefore, that a resurvey that changes lines and distances and purports to correct inaccuracies or mistakes in an old plat is not competent evidence of the true line fixed by the original plat. See Dittrich v. Ubl, 216 Minn. 396, 13 N.W.2d 384; Cragin v. Powell, 128 U.S. 691, 9 S.Ct. 203, 32 L.Ed. 566; City of Racine v. Emerson, 85 Wis. 80, 55 N.W. 177, 178.
Moreover, it appears that the deficiency in Block Fifty which Garris apportioned among the lots in that block, may have resulted not from an original deficiency in the block, as platted by Knowlton, but from the reestablishment of the streets made by the Klyce survey. The rule is that where streets are reestablished and the side lines are changed in position, only properties abutting the street are affected, and the interior lines of the block are to be located with regard to the original position of the street or from acknowledged monuments within the block. Skelton, Boundaries and Adjacent Properties, Section 268, page 296.
It further appears, from the testimony of Garris, as well as that of the defendant Frank D. Akin, that at the time the Knowlton plat was made, the surveyor placed wooden stakes to mark the location of the several lots and blocks. Mr. Akin testified that the iron stake, heretofore referred to, from which the line marking the boundary of Lot Three was run and in reliance upon which the concrete pillars were erected by defendants, was a replacement of the original Knowlton wooden stake marking the boundary between Lots Three and Four. As stated in 8 Am.Jur., Boundaries, Sec. 59, page 78: "Purchasers of town lots generally have the right to locate their lot lines according to the stakes as actually set by the platter of the lots, and no subsequent survey can unsettle such lines. In the event of a subsequent controversy the question becomes not whether the stakes were located with absolute accuracy, but whether the lots were purchased and taken possession of in reliance upon them. If such was the case, the rule appears to be well established that they must govern notwithstanding any errors in locating them."
It is true that the determination of the location of the boundary line between Lots Three and Four is a question of fact for the jury to decide, but, as stated in Craig v. Russell, 141 Fla. 105, 192 So. 457, 458, "* * * it is also true that where material or harmful error clearly appears in a survey or plat on which a judgment in ejectment is based, the judgment will be reversed."
For the reasons stated, the judgment is reversed as to the boundary line between Lots Three and Four and the cause remanded for new trial on that question.
Reversed and remanded.
ADAMS, C.J., and CHAPMAN and SEBRING, JJ., concur.