97 So.2d 708 (1957)
MEXICO BEACH CORPORATION, a Florida corporation, Appellant,
v.
ST. JOE PAPER COMPANY, a Florida corporation, Appellee.
No. A-69.
District Court of Appeal of Florida. First District.
November 5, 1957.
Rehearing Denied November 22, 1957.
*709 William B. Leath, Panama City, and E.E. Calloway, Blountstown, for appellant.
J. Lewis Hall, Tallahassee, for appellee.
WIGGINTON, Judge.
The appellee, St. Joe Paper Company, brought suit in the Circuit Court of Bay County against appellant, Mexico Beach Corporation, for the purpose of quieting title to certain lands bordering on the Gulf of Mexico. It is from a summary decree for plaintiff that this appeal is taken.
There is no dispute as to the facts: Fractional Section 15, Township 6 South, Range 12 West, was duly and regularly surveyed by the Federal Government in 1833, and a plat thereof filed in the General Land Office. According to this plat, fractional Section 15 contains 624.23 acres, the West half of the southern boundary of which borders on the Gulf of Mexico. This land was conveyed by the United States to the State of Florida by patent dated September 18, 1856, at which time it contained little, if any, more than the 624.23 acres recited in the aforementioned plat. Subsequently, between 1865 and 1869, certain new lands were formed by gradual and imperceptable degrees along the water boundary of this fractional Section. These new lands have never been surveyed or designated by the United States Government or the State of Florida as coming within the bounds of any prescribed Township or Section. It is this tract of land, to which appellee claims title and for which its suit to quiet title was brought, that forms the subject matter of this cause.
On April 17, 1883, some fourteen years after the land in controversy had been formed, the State of Florida conveyed "All of section * * * fifteen * * * Township six South of Range twelve west" to appellee's predecessor in title. Title to the said Section passed to appellee by subsequent mesne conveyances variously describing the land as "Fractional Section 15", "Section 15", and "All Section 15". At the date of the conveyance by the State the alluvial lands were of more than sufficient quantity to render fractional Section 15 a complete and entire section of 640 acres if such could have been accomplished by protracting its southern boundary line westward and its western boundary southward to a point of intersection. Such a procedure would have resulted in additional lands remaining South of the protracted lines, which lands would lie between the protracted south boundary and the Gulf of Mexico.
Briefly stated, it is appellant's position that the deed from the State of Florida, as grantor, passed title only to that tract of land described by the aforementioned plat as containing 624.23 acres, or, at most, only such additional lands as may have been necessary to render fractional Section 15 a complete, square section containing 640 acres. And, therefore, title to the remaining lands continues in the State of Florida. Appellee contends that all the lands in question, having been formed by accretion, became an increment to the land described in the original survey, and that title thereto passed to the various grantees in conveyances of title to fractional Section 15. It was upon the issue thus formed that the Chancellor found for appellee and entered his summary decree quieting title to all the questioned lands in appellee.
Appellant's contention that the State conveyed to its immediate successor in title a square section containing 640 acres is untenable. Sections and boundaries are created by Government survey and not merely designated thereby.[1] Having been surveyed and created as a fractional section, the boudaries of Section 15 cannot be *710 arbitrarily projected so as to make it a complete section containing the customary 640 acres. Appellee must either succeed in its claim to all the lands in question, or it must take none of them.
The parties by their pleadings and proofs, and the trial court by its decree, are in agreement that the lands in question are alluvion formed by accretion as distinguished from avulsion.[2] If this be true the rules of law governing accretions must control our decision.
In the Roman Law it was said: "Alluvion is an addition of soil to land by a river, so gradual that in short periods the change is imperceptible; or, to use a common expression, a latent addition."[3] Justinian says: "That is added by alluvion, which is added so gradually that no one can perceive how much is added at any one moment or time."[4] This same rule was introduced into English jurisprudence. The doctrine, as set forth in the English cases, is that accretion is the process of addition to land coterminous with the water, which is formed so slowly that its progress cannot be perceived, and does not admit of the view that, in order to be accretion, the formation must be one not discernible by comparison at two distinct points of time.[5]
In his treatment of the subject, Blackstone has this to say:[6] "And as to lands gained from the sea, either by alluvion, by the washing up of sand and earth, so as in time to make terra firma; or by a dereliction, as when the sea shirks back below the usual water mark; in these cases the law is held to be, that if this gain be by little and little, by small and imperceptible degrees, it shall go to the owner of the land adjoining. For de minimus non curat lex; and besides, these owners being often losers by the breaking in of the sea, or at charges to keep it out, this possible gain is therefore reciprocal consideration for such charge or loss."
In the United States, "The rule governing additions to land bounded by a river, lake or sea, has been much discussed and variously settled by usage and by positive law. Almost all jurists and legislators, however, both ancient and modern, have agreed that the owner of the land thus bounded is entitled to these additions. By some, the rule has been vindicated on the principles of natural justice, that he who sustains the burden of losses and of repairs, imposed by the contiguity of waters, ought to receive whatever benefits they may bring by accretion; by others, it is derived from the principle of public policy, that it is the interest of the community that all land should have an owner, and most convenient that insensible additions to the shores should follow the title to the shore itself."[7] The common-law rule which vests title to soil formed along navigable waters by accretion or reliction in owners of abutting lands is the rule applicable in Florida.[8]
It must be observed at the outset that at the time fractional Section 15 was surveyed and designated in 1833, and when it was patented to the State of Florida in 1856, the western half of its southern boundary bordered on the Gulf of Mexico at the same, or nearly the same point as shown by the survey. It was while title to Section 15 reposed in the State that the lands in question were gradually and imperceptibly formed. Thus by application of the foregoing rules, it must be concluded that the tract of land here in question, lying *711 south of fractional Section 15 as originally surveyed is in law alluvion formed by accretion, title to which vested in the State of Florida as owner of fractional Section 15.
Appellant insists that title to these alluvial lands, having vested in the State, did not pass to the grantee of the State's deed conveying "All of Section 15", but remained in the State. Appellee, on the other hand, contends that this description of the land in effect incorporated the survey description and made the Gulf of Mexico the true southern boundary, as provided in the survey, and therefore passed title to any alluvial land that might have been formed as of that time.
When lands described in a deed are by reference to or in accordance with a plat or survey, the courses, distances, and other particulars appearing on the plat are to be as much regarded as if expressly set forth in the deed itself.[9] By Government survey the waters of the Gulf of Mexico became the southern boundary of a portion of fractional Section 15. Alluvial lands subsequently formed by accretion became an increment to and formed a part of that section. The State, had it so intended, could have surveyed and designated or otherwise identified and excepted these lands from its conveyance, thereby reserving to itself title to the alluvial lands. In the case now before this court, there appears no evidence of such an intention. The same is the case with each successive grantor, and each must be held to have passed title to fractional Section 15 to the edgewaters of the Gulf of Mexico as shown in the survey, notwithstanding the fact that the geographic location of such waters may have been altered by accretion.[10]
We have carefully considered the authority on which appellant relies for reversal of the Chancellor's decree. The case of Jones v. Johnston[11] upon which appellant places great stress cannot be considered as authority for its position in the instant case. There the only issue decided was that a natural water boundary of a parcel of land, no matter how it shifts as a result of accretion or dereliction, is just as fixed a boundary as a permanent object. The Court there held, and we think correctly so, that when land is described and conveyed by metes and bounds the grantee takes only such lands as lie within the description, and cannot acquire as an appurtenance thereto any adjoining lands which may have been previously formed by accretion or dereliction.[12] The principles of law announced in that case are not inconsistent with those heretofore expressed in this opinion.
Having so concluded, it is the judgment of this Court that the summary decree from which this appeal was taken must be and the same is hereby affirmed.
STURGIS, C.J., and O'CONNELL, STEPHEN C., A.J., concur.
NOTES
[1] 73 C.J.S. Public Lands, § 31. Cox v. Hart, 260 U.S. 427, 43 S.Ct. 154, 67 L.Ed. 332.
[2] Black, Law Dictionary (4th Ed. 1951).
[3] Institutes of Gaius, Book II, § 70.
[4] Institutes, Book II, title 1, § 20.
[5] Gifford v. Lord Yarborough, 5 Bing. 163; Re Hull & S.R. Co., 5 Mees. & W. 327; Scratton v. Brown, 4 Barn. & C. 485.
[6] 2 Blackstone, Commentaries 262.
[7] Banks v. Ogden, 2 Wall. 57, 67, 69 U.S. 57, 67, 17 L.Ed. 818, 821.
[8] Brickell v. Trammell, 77 Fla. 544, 82 So. 221; Merrill-Stevens Co. v. Durkee, 62 Fla. 549, 57 So. 428; Broward v. Mabry, 58 Fla. 398, 50 So. 826.
[9] See: Kahn v. Delaware Securities Corp., 114 Fla. 32, 40, 153 So. 308, 311; Andreu v. Watkins, 26 Fla. 390, 7 So. 876; Fox v. Union Sugar Refinery, 109 Mass. 292.
[10] Jefferis v. East Omaha Land Co., 134 U.S. 178, 10 S.Ct. 518, 33 L.Ed. 872; Tappendorf v. Downing, 76 Cal. 169, 18 P. 247.
[11] 18 How. 150, 59 U.S. 150, 15 L.Ed. 320.
[12] See: Lord v. Curry, 71 Fla. 68, 71 So. 21; Rivas and Koopman v. Solary, 18 Fla. 122.