BARFIELD, Judge.
Robert E. Summers, defendant in the trial court, appeals from a final judgment granting possession of certain real property to James Scott McOwen, plaintiff below.
*398 McOwen purchased the western half of the northeast quarter of Section 26, Township 7 South, Range 17 East in Alachua County, Florida, in 1973. The property was surveyed by Wayne Chance at the time of the purchase.
Summers bought his property, which adjoins McOwen’s on the west, in 1982 and placed a mobile home on it near what he believed was his eastern boundary. McOwen felt that, according to Chance’s survey, the mobile home encroached on his property and brought a suit in ejectment. The only issue in this case is whether the survey on which plaintiff relies is free of material error.
Wayne Chance, McOwen’s surveyor, testified that he began at the northeast corner of the section and found iron pipes or monuments to establish the four corners of the section. The distances of the north, east and west section lines are within a few feet of the distances established in the original government survey, but the south line was 83 feet short of the distance in the original survey. He believes that the southwest corner of the section was originally west of where it is now located, but accepted the current location. He found a concrete monument on the south line 48 feet east of where the proportional center of the south line would be located. He feels the quarter section corner on the south line is lost. He refused to accept the concrete monument and calculated the center point (quarter-section corner) in laying out McOwen’s land. He accepted the monument, however, for purposes of property rights in the south hall of the section, since property rights had long been determined according to it. This results in a bent center line under Chance’s scheme. He justified this on grounds of “equity.”
Harold Wise was Summers’ surveyor. He accepted the same section corners as Chance, but felt the southeast corner was probably misplaced. He accepted the concrete monument as the quarter section corner for purposes of determining the McOwen/Summers property line.
The resulting disputed area is approximately 20 feet wide at the boundary. Wise testified that the quarter section corner on the south line was obliterated, so he accepted the monument. Proportionment should only be used with lost corners and only as a last resort, according to him.
The defense called Henderson, another surveyor, as an expert witness. He stated that only lost corners should be fixed by proportion and that, by definition, a center line must be straight. A surveyor cannot bend lines for purposes of equity.
Plaintiff called Hazen, another surveyor, in rebuttal. He stated that he never accepted a monument more than 8 feet off center as a quarter section corner and distinguished between a half-mile post and a quarter section corner. He accepts the Chance survey as correct, but admitted on cross-examination that a center line should be straight and that the same line should be used in dividing the north and south halves of a section.
The trial judge ruled for plaintiff, and accepted Chance’s survey. He did not believe the establishment of “possession lines” in the south half of the section had anything to do with establishing the true quarter section line.
Before addressing the issues raised in this case, it is important to determine the proper standard of review. The Florida Supreme Court has defined the standard in this manner:
It is true that the determination of the location of the boundary line ... is a question of fact for the [fact finder] to decide, but, as stated in Craig v. Russell, 141 Fla. 105, 192 So. 457, 458 [1939], “ * ⅜ * it is also true that where material or harmful error clearly appears in a survey or plat on which a judgment in ejectment is based, the judgment will be reversed.”
Akin v. Godwin, 49 So.2d 604, 607 (Fla.1950).
The underlying issue in this case is whether the quarter section corner on the south line was obliterated or lost, and *399 whether Chance or Wise correctly located it.[1] Three principles should be remembered. First, an obliterated corner “controls” over a lost corner. Grimes, Clark on Surveying and Boundaries § 375 (4th ed. 1976). Second,
No corner should be regarded as lost until every means has been exhausted in an attempt to locate it either from the original monument or from the accessories. Though accessories may first appear, on casual examination, to be destroyed, on a careful, systematic search, evidence of their location may be found. Where search for monuments or accessories can be made from a single known point, the problem is materially simplified and directly other points may become known and together furnish unmistakable evidence of the location of the corner.
⅝ ⅜ ⅜: ⅜ He ⅝
A corner should not be regarded as lost until all means of fixing its original location have been exhausted. It is more satisfactory to so locate the corner than regard it as “lost” and locate by “proportionate” measurement.
⅝ ⅜ ⅜! Jfc ⅝ ⅝
The rules for the restoration of lost corners are not to be applied until after the development of all evidence, both original and collateral, that may be found acceptable, though the methods of proportionate measurement will aid materially in the recovery of the evidence and will indicate where the resulting locations may be.
Id. at § 381.[2] Finally, regarding the acceptance of obliterated corners:
A corner is “obliterated” if there are no remaining traces of the monument or its accessories but the location has been perpetuated or may be recovered beyond reasonable doubt by the acts and testimony of the interested landowners, competent surveyors, other qualified local authorities or witnesses, or by some acceptable record evidence.
A position that depends upon the use of collateral evidence can be accepted only if duly supported, generally through proper relation to known corners, agreement with field notes regarding distances to natural objects, stream crossings, line trees and off-line tree blazes, or unquestionable testimony.

Id.

Chance gave the following testimony regarding his rejection of the concrete monument as the quarter-section corner of the south line:
Q. After locating the four corners of Section 26, how did you next proceed? A: In surveying Section 26, we found— the next way you proceed to survey a piece of property that we were going to survey, which was the west half of this forty right here, would be to establish the center of the section. The center of the section is established by an intersection on the line east and west and north and south through the corresponding quarter section corners.
In surveying the section on the south boundary, we found a concrete monument right here that was some eighty-seven feet, I think, too far east to be a proportional measurement between the two section corners. Rather than accepting that corner as the quarter section corner on the south boundary, after examining the fences, the occupation and other evidence in this area, we felt — I felt that it was more equitable to establish this corner proportionately on paper in order to establish the center of the section in order to establish the west .half of the northeast quarter.
*400 But, because of the occupation and possession that existed around this corner and because, that occupation being in the form of fences, it more nearly fit a line between here and here, we felt it was better to then bend our quarter section line to the center, come to here, and call this a property corner. The quarter corner would be here. This is a property corner by occupation and possession (indicating).
Q: Would it be your testimony that the quarter section corner on the south line of Section 26 was a lost corner?
A: Yes, it is lost because it doesn’t exist and none of the accessories exist. The actual quarter corner is lost, yes.
We question whether Chance exhausted every means to locate the original monument, and was therefore entitled to declare the quarter section corner lost. Chance failed to consult with McGriff, a retired surveyor, who surveyed the property in 1953.[3] Additionally, Chance’s acceptance of the concrete monument as a point on a “possession line” for the south half of the section is also troubling.[4] Although arguably irrelevant, as the trial court found, it does result in a bent center line, which is prohibited. Clark § 377.[5] This certainly undermines the credibility of Chance’s opinion that the quarter-section corner was lost.[6]
Contrary to Chance’s opinion, Wise’s testimony seems to establish the concrete monument as an obliterated quarter section corner. He consulted the original government survey and later surveys had found the monument to be within a few feet of the proper measure from the southwest corner (he feels the southeast corner is incorrect). This also places the quarter-section corner within 2 feet of a very old fence line. Since both surveyors agree that the original accessories cannot be located, Wise’s identification of an obliterated corner seems correct.
The problem in this case arises because the south section line is approximately 80 feet short of its distance as stated in the original survey. Neither party produced competent evidence to show whether the shortage was present in the original survey and perpetuated or whether the error occurred later when a surveyor incorrectly retraced the original and misplaced a marker.[7] All four expert witnesses accepted the markers found by Chance as obliterated section corners.
We hold that plaintiff failed to prove that the survey conducted by Wayne Chance was a correct one free of material error, and therefore we REVERSE and REMAND with instructions to enter judgment for the defendant.
ERVIN and JOANOS, JJ., concur.

. The definitions of existent, obliterated, and lost corners are set forth in Gilman Paper Co. v. Newman, 398 So.2d 887, 888 nn. 1-3 (Fla. 1st DCA 1981).

. Plaintiff’s objection to introduction of the McGriff survey was sustained.

. Chance’s recollection that the concrete monument is 87 feet east of the proportional center was apparently incorrect. Other evidence indicates the monument is approximately 48 feet east of the proportional center.

. Chance might have been implying that parties in the south half of the section had acquired rights by adverse possession off of the true line, but he testified that he bent the center line on grounds of equity.

. Chance’s reliance on equity to bend the center line is contrary to accepted surveying practice:
One additional caution, addressed especially to the surveyor employed by the Bureau of Land Management, is to bear in mind that his professional work is technical in character, not legal or judicial. The surveyor is not a referee as to the justice or injustice of a situation, nor is he qualified to act judicially upon the equities or inequities that may appear to be involved.
Department of Interior, Manual, supra, note 2, § 5-13.

.Chance stated the southwest corner was “wrong", while Wise felt it was the southeast. Wise's version seems more credible, in part because the concrete monument in dispute as quarter section marker is east of center, and also because Wise checked the southwest corner in relation to corners of other sections and found it to be correct.