THOMPSON, Judge.
This is an appeal from a final order establishing a boundary between the properties owned by the parties. Willis contends, inter alia, that the court erred in establishing a boundary on the basis of a new survey rather than on the basis of a resurvey of the original survey. We agree and reverse.
In 1971 Willis deeded to Campbell and wife (Campbells) lands described as “The North ⅛ of the East V2 of the East ½ of the Northwest ¼ of the Northwest ¼ of Section 6, Township 1 South, Range 31 West, Escambia County, Florida.” Willis reserved the east 30 feet of the property deeded to the Campbells as an easement for access to other lands she owned to the south of that property. At the time of the conveyance to the Campbells an old fence line existed along what was thought to be the east boundary of the property purchased by the Campbells and an old trail road lay to the west of and within 30 feet of that fence line. The Campbells knew that the easement had been reserved in order to preserve the trail road for access to the back lots still owned by Willis.
In 1973 Willis bought the parcel of land to the east of the property she had previously sold to the Campbells and thus the west boundary of Willis’ property became the common boundary between the Camp-bells’ land to the west and Willis’ land to the east. So far as the record reveals, as of 1973 everyone involved either assumed that the old fence line was the boundary, or had never given any thought to the matter. Sometime later Willis graded the old trail road and sold off several back lots which lay south of the Campbells’ property. In the deeds to these lots, Willis granted an easement for access which she believed and intended to be in the same location as the easement she had reserved over the east 30 feet of the Campbells’ property. However, in the deeds to these several back lots, instead of describing the easement as being the east 30 feet of the Campbells’ property, she described it as being 15 feet on either side of a center line which was a north/south line commencing 1318.66 feet to the east of the northwest corner of the section.
In 1984 the Campbells decided to fence their property and had the property surveyed by T.F. Benson, a registered engineer and land surveyor. Benson found the east boundary of the Campbell property to be 1333 feet east of the northwest corner of the section. Accordingly, to allow for the easement, the Campbells built their *302 fence along a north/south line located 1303 feet east of the northwest corner of the section. The fence ended up being near the middle of the road which Willis had graded, and was only 18 feet away from the old fence line rather than 30 feet away. Willis was thereafter obliged to regrade the road to the back lots in order to provide access and in doing so she was required to clear out the brush that surrounded the old fence line and move most of what was left of the old fence line. Because Willis didn’t want to remove a number of large desirable trees including pecans that had grown up along the old fence line, she was unable to construct a road wide enough for two cars to pass in the space between the Campbells’ new fence and what had been the old fence line. Although there was little direct evidence on the matter, it appears that the owners of the back lots began driving on the east side of the old fence line when exiting their property and thus created what in effect was a two lane road with a line of trees down the middle of it. Apparently this additional encroachment on Willis’ land was more than she was willing to accept, and she hired William T. Butler, a registered land surveyor, and instructed him to attempt to reestablish the original boundaries and demonstrate that the old fence line was in fact the boundary between her property and the Campbells’ property. At trial Willis established that the original government grant of the lands at issue was the North ⅝ of the Northwest ¾⅛ of the section. The original federal grant did not establish the boundary between the two parcels involved in this controversy. After the original grantee’s death his heirs made a parol partition of the property, and sometime between 1925 and 1930 the heir owning the Willis parcel built a fence along what he apparently believed was his west property line. The uncontradicted testimony of two of his daughters indicated that the fence had been built as a boundary and not as a livestock barrier or for any other reason.
Butler testified that based on information he received from other surveyors there had been an unrecorded subdivision done by surveyor Cook within at least the Northeast ¼ of the Northwest ¼ of the section. Butler indicated that he found certain monuments left by Cook and that the old fence line would have been consistent with the boundary if established by Cook’s survey. Butler further testified that the error in locating boundaries in this particular area appeared to be the result of the fact that surveying protocol requires that all error within an entire township be corrected in the northwest section of the township which is Section 6, the section in which the property in controversy is located. According to Butler, Cook surveyed the land as if it were in a normal section having a 5280 foot boundary when in fact the north boundary of this Section 6 is actually 5335.8 feet. The boundary between the Willis and Campbell properties, as established by the Cook survey, was supposed to be 1320 feet east of the northwest corner of section 6. According to Butler, the boundary line established by Cook on the ground is 1321.12 feet east of the northwest corner of Section 6. The 1.12 feet difference is apparently a measurement error by Cook in establishing the line as he intended it to be 1320 feet.
The boundary line established by that unrecorded plat will control over a subsequent resurvey purporting to accurately locate the boundary line, if the original survey lines can be located and determined. Akin v. Godwin, 49 So.2d 604 (Fla.1951); Gibson v. Wright, 179 So.2d 245 (Fla.1st DCA 1965). As stated by our Supreme Court in Akin:
In making a resurvey, the question is not where an entirely accurate survey would locate the lines, but where did the original survey locate such lines. Clark on Surveying and Boundaries, 2d Ed., Sec. 411, page 495; Kahn v. Delaware Securities Corporation, 114 Fla. 32, 153 So. 308; LeCompte v. Lueders, 90 Mich. 495, 51 N.W. 542; City of Racine v. Emerson, 85 Wis. 80, 55 N.W. 177; Dittrich v. Ubl, 216 Minn. 396, 13 N.W.2d 384. As stated in 8 Am.Jur., Boundaries, Section 102, page 819: “The object of a *303 resurvey is to furnish proof of the location of the lost lines or monuments, not to dispute the correctness of or to control the original survey. The original survey in all cases must, whenever possible, be retraced, since it cannot be disregarded or needlessly altered after property rights have been acquired in reliance upon it.” It is generally held, therefore, that a resurvey that changes lines and distances and purports to correct inaccuracies or mistakes in an old plat is not competent evidence of the true line fixed by the original plat, (citations omitted).
Butler was able to locate the original corners of the Cook survey and a bolt Cook used. At the comer where the description of the lots of the Cook survey began he also found some of Cook's original corners in the lots and was able to locate the west boundary line of Willis’ lot 1 of Cook’s unrecorded survey which is also the east boundary line of the parcel owned by the Campbells. He further stated that about one foot outside of that line there was an existing fence line but that it “was right along on the west line” of the Willis property, all of which indicates that the fence line as established was 1320 feet west of the northwest comer of Section 6. Survey- or Butler had an obligation to attempt to locate the original survey lines. He did so, and even though the original boundary line was not entirely accurate it does prevail as the boundary in a boundary dispute.
Butler also testified concerning where the line should be if a survey were performed in accordance with the surveyor’s manual of instruction, and he stated that a correct boundary line established by the manual would be 1347.91 feet east of the northwest comer of Section 6. The court erred as a matter of law in accepting Butler’s testimony as to where the boundary would be if established according to the surveyor’s manual of instruction as establishing the correct boundary. Akin.
The Campbells also contend the government survey is the original survey and that the original survey should prevail. This would be true if the boundary in question was the boundary of a government lot so that the actual boundaries of these lots had béen established by government survey. However, the government survey in this case established only the corners of the section and did not establish the boundary between the two parcels of property in question.
The i judgment is reversed as to the boundary line between the Willis and Campbell property and the cause is remanded for a new trial on that question with instructions to determine the boundary based upon the original Cook survey.
REVERSED and REMANDED.
JOANOS and NIMMONS, JJ., concur.