974 So.2d 1144 (2008)
Stewart J. ANDREWS and Leda N. Andrews, Appellants,
v.
Donald J. BARTON, Appellee.
No. 3D06-1247.
District Court of Appeal of Florida, Third District.
February 13, 2008.
Diane Tolbert Covan, Key West; Burlington & Rockenbach, P.A., West Palm Beach, for appellants.
Charles M. Milligan, Key West, for appellee.
Before COPE and GREEN, JJ., and SCHWARTZ, Senior Judge.
COPE, J.
Stewart J. Andrews and Leda N. Andrews, defendants below, appeal a partial final judgment entered after a jury verdict in favor of plaintiff Donald J. Barton, finding the defendants to be negligent and awarding the plaintiff $31,570. The defendants argue, among other things, that the trial court erred by refusing to admit the tax assessor's map. We conclude that the point is well taken, and reverse for a new trial.
This is a boundary dispute between two neighbors. In 1996, the defendants bought Lot 32, of Block 54, on Stock Island, which is near Key West. The property is in an industrial area. Although there are survey markers at various locations on Block 54, there were none marking the corners of Lot 32. The defendants built a storage shed within what they believed to be the boundaries of Lot 32. They poured a concrete slab, supplied electricity to the shed, maintained the shed, and used it for *1146 storage. The remainder of Lot 32 had construction materials and miscellaneous property stored on it.
In 2000, the plaintiff bought the lots to the east of Lot 32, being Lots 31, 30, and 29, minus a 50-foot strip of land at the east end of Lots 29 and 30. The plaintiff's land is at the east end of Block 54, adjacent to Fourth Avenue.
The plaintiff obtained a survey prepared by Frederick H. Hildebrandt showing that the defendants' shed was on the plaintiff's property, Lot 31, not on the defendants' property, Lot 32. The plaintiff demanded that the defendants vacate the shed and remove their personal property. When the defendants removed their personal property and a wood rack inside the shed, the shed collapsed. The defendants removed the remainder of their property, disconnected the electricity, and used a backhoe to knock down the remainder of the shed.
The plaintiff sued the defendants for damages. The plaintiff also requested an injunction to require the defendants to clear the property of trash and material the defendants had placed there.
In the meantime, the defendants had concluded that the Hildebrandt survey was in error and that defendants owned the shed and the property on which it was located. The defendants filed their answer and counterclaim to quiet title and for adverse possession.[1]
At trial, the plaintiff called surveyor Hildebrandt as an expert witness to testify that the shed was on the plaintiff's property and the defendants called surveyor Robert E. Reece as an expert witness to testify that the shed was on the defendants' property. The jury returned a verdict for the plaintiff. The trial court entered an appealable final judgment for damages, and the defendants have appealed.
By way of background, this part of Stock Island was platted in 1911. In 1948 a quarry was built for the mining of marl. The quarry owners, the Toppino brothers, built a marl road to transport their product. Subsequently the road was paved, and is now Fourth Avenue.
In 1963 or 1964, there was a meeting of the property owners in the area. It had come to light that the road had been built farther to the west than was shown on the plat. As relates to the property involved here, the paved road and right of way encroached about fifty feet onto Lots 29 and 30, which are at the eastern end of Block 54.
In 1969, the then owners of Lots 29 and 30, Helio and Waldina Gomez, conveyed a strip of land approximately fifty feet wide ("the fifty-foot strip") to Monroe County for road purposes.[2] In 2000, the plaintiff purchased Lots 29, 30, and 31 from a subsequent owner, minus the fifty-foot strip which the Gomezes conveyed to Monroe County.
When the plaintiff's surveyor testified, he stated that in doing his survey, he relied on the recorded plat and the plaintiff's statement that he had purchased Lots 29, 30, and 31. The plaintiff's surveyor conceded that he did not look at the plaintiff's deed and was unaware of the "less and except" provision which excluded the fifty-foot strip. He contended, however, that this exclusion would not make any difference in the survey. He opined that the shed was located on the plaintiff's land.
*1147 The plaintiff's surveyor testified that he had measured the entirety of Block 54 and found a discrepancy between the actual measurements of the land versus the land as shown on the plat. The surveyor's solution to this was to say that all of the lots in Block 54 would have to be reduced in width by 2.3 feet. The plaintiff's surveyor took that position even though there had been no proceeding to replat the block and even though the westerly property owners in Block 54 were not parties to this litigation.
The defendants' surveyor testified that any surveyor must begin with an accurate legal description of the property being surveyed, which should be taken from the deed, not a verbal description. The defendants' surveyor reviewed the plaintiff's deed which revealed that the plaintiff did not own the fifty-foot strip. The defendants' surveyor testified that he and his crew had located a number of survey monuments and markers in Block 54, including a dozen corner markers, although no corner markers for Lot 32. The defendants' surveyor stated that once the exclusion of the fifty-foot strip was taken into account, the measurement of Block 54 revealed that the amount of land in Block 54 was consistent with the plat. The defendants' surveyor opined that the shed was located on the defendants' property, Lot 32.
According to the defendants' surveyor, the plaintiff's surveyor erred by failing to note that the plaintiff does not own the fifty-foot strip, which the Gomezes conveyed to Monroe County. This means that the plaintiff's survey locates the property lines fifty feet to the west of where it should. According to the defendants' surveyor, the effect of this fifty-foot error is to relocate the plaintiff's land so it is positioned on top of the defendants' Lot 32.
Turning now to the claim of evidentiary error, the defendants testified that they had been billed for, and paid, the taxes on Lot 32. The defendants' surveyor testified that he had consulted the property appraiser's map in doing his work and the appraiser's map was consistent with the plat of Block 54. The defendants sought to introduce the property appraiser's map into evidence to demonstrate where Lot 32 was located, so far as the property appraiser was concerned. The plaintiff objected, and the appraiser's map was excluded from evidence.
We conclude that the property appraiser's map should not have been excluded. It was at least some evidence on the boundary issue and the location of the shed on which taxes had been paid. "Any competent evidence, whether documentary or parol, which is admissible to establish other facts and which will tend to identify the location of a disputed boundary is admissible and may be received in evidence[.]" Calder v. Hillsboro Land Co., 122 So.2d 445, 456 (Fla. 2d DCA 1960) (citation omitted) (internal quotation marks omitted). We therefore reverse for a new trial.
Although not raised as an issue by the parties, we conclude that on remand the plaintiff's survey must be excluded from evidence. There is no proper predicate for its admission, because it is based on a materially incorrect legal description.
The purpose of the surveys in this boundary dispute is to locate accurately the boundary between the plaintiff's and defendants' property. To do this, the survey must begin with an accurate description of what land the parties own. The defendants' survey complies with this requirement by stating, on the face of the survey, an accurate legal description of the relevant properties. These were, in substance, Lots 29, 30, 31 (plaintiff's property), and 32 (defendants' property) of Block *1148 54, Stock Island, less and except the fifty-foot strip.[3]
The plaintiff's survey, by contrast, states that he has prepared a survey of Lots 29, 30, and 31 of Block 54. There is no "less and except" for the fifty-foot strip.[4] That is not an accurate legal description.
To have probative value, the plaintiff's survey must contain an accurate legal description of the property being surveyed. An expert "opinion is admissible only if it can be applied to evidence at trial." § 90.702, Fla. Stat. (2006). Because the plaintiff's survey is based on a materially inaccurate legal description, it must be excluded from evidence on remand. See Summers v. McOwen, 478 So.2d 397, 398 (Fla. 1st DCA 1985).[5]
Finally, we direct that the trial court proceed first on remand to resolve the issue of the location of the lot boundaries. Given the testimony that a number of survey monuments and markers already exist in Block 54 (although no corner markers for Lot 32), it should be possible by use of measurements from the known monuments and markers to resolve the boundary issue as a matter of law. See generally Akin v. Godwin, 49 So.2d 604, 607 (Fla.1950); Tyson v. Edwards, 433 So.2d 549 (Fla. 5th DCA 1983). In other words, by utilizing a survey or surveys containing the correct legal description, and by locating the existing monuments and markers in Block 54, it appears likely that the claimed boundary conflict will disappear. Any issue regarding the fifty-foot strip and the location of Fourth Avenue affects only the plaintiff's abutting property, not the interior lot owners. See Akin, 49 So.2d at 607.
We reject the defendants' remaining points on appeal without discussion.
For the stated reasons, we reverse the partial final judgment and remand the *1149 cause for further proceedings consistent herewith.
NOTES
[1] The quiet title counterclaim remains pending. The defendants dropped their adverse possession counterclaim.
[2] The Gomez deed to Monroe County described the strip as being 49.85 feet wide at the north end, and 58.79 feet wide at the south end.
[3] The legal description on the defendants' revised survey states in full:

LEGAL DESCRIPTION:
Lots 29, 30, 31, and 32, in Block 54, Stock Island, Plat Book 1, Page 55, A1-396, Monroe County, Florida records
LESS AND EXCEPT:
A part of Lots 29 and 30, Block 54 of "THE PLAT OF STOCK ISLAND", as recorded in Plat Book 1, Page 55 of the Public Records of Monroe County, Florida and being more particularly described by metes and bounds as follows:
Commencing at the Northeast corner of Lot 29, said corner to be known as the POINT OF BEGINNING of the lands hereinafter described, bear West, along the North line of Lot 29, 49.85 feet; thence bear southwesterly 180 feet more or less, to a point on the South line of Lot 30, said point being 58.79 feet West of the Southeast corner of Lot 30, thence bear East along the South line of Lot 30, 58.79 feet to the Southeast corner of Lot 30; thence bear North 34 degrees, 28 minutes and 02 seconds East, along the Easterly Line of Lot 29, 180.92 feet, back to the POINT OF BEGINNING.
[4] The legal description on the plaintiff's survey states in full:

LEGAL DESCRIPTION:
Lots 29, 30 & 31, Block 54, "MALONRY PLAT OF STOCK ISLAND", according to the plat thereof, as recorded in Plat Book 1, at Page 55, of the Public Records of Monroe County, Florida.
The plaintiff's survey did not undertake to make a complete survey of the boundaries of Lot 32, owned by defendants. However, the plaintiff's survey shows that Lot 32 lies to the west of the plaintiff's Lot 31.
[5] By failing to exclude the fifty-foot strip from the plaintiff's ownership, the plaintiff's surveyor assumed that the plaintiff's property is fifty feet wider than it really is. The plaintiff's surveyor placed the entirety of the plaintiff's property to the west of Fourth Avenue, but the fifty-foot strip (which the plaintiff does not own) lies under Fourth Avenue, not west of Fourth Avenue. The effect of this error was to place the boundary fifty feet to the west of where it really is, and (since the defendants' Lot 32 is only fifty feet wide), erroneously placed the plaintiff's property on top of the defendants' Lot 32.